FILED
United States Court of Appeals
Tenth Circuit

November 30, 2007

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

LYNN JEWELL,

       Plaintiff-Appellee-
       Cross-Appellant,

    v.

LIFE INSURANCE COMPANY
OF NORTH AMERICA,

       Defendant-Appellant-
       Cross-Appellee.

Nos. 06-1272, 06-1288

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:04-CV-122-ZLW-BNB)**

Marcy G. Glenn (Christina F. Gomez and Jack M. Englert with her on the briefs),
Holland & Hart LLP, Denver, Colorado, for Defendant-Appellant - Cross-
Appellee Life Insurance Company of North America.

Mark H. Kane, Kane Law Firm, P.C., Colorado Springs, Colorado, for Plaintiff-
Appellee - Cross-Appellant Lynn Jewell.

Before **McCONNELL**, **EBEL**, and **GORSUCH**, Circuit Judges.

**McCONNELL**, Circuit Judge.

The Life Insurance Company of North America ("LINA") appeals an order granting Lynn Jewell's claim for long-term disability benefits under the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.*, ("ERISA"), arguing that the district court should not have considered three exhibits from outside the administrative record. Mr. Jewell cross-appeals, seeking an award of attorney's fees and an earlier date for the accrual of prejudgment interest. Because we hold that the district court abused its discretion in admitting and considering the extra-record exhibits, we reverse its judgment in LINA's appeal. Mr. Jewell's cross-appeal issues are therefore moot, and his appeal is dismissed.

## I. FACTUAL AND PROCEDURAL HISTORY

### A. Proceedings Before the Plan Administrator

Lynn Jewell was hired by Sprint Telecommunications Venture as a Director of National Sales and began work on April 21, 1997. Sprint's employee health benefits plan, in which Mr. Jewell participated, is underwritten and administered by LINA. Precisely a year later, on April 22, 1998, Mr. Jewell filed a claim for disability benefits, stating that he was "[u]nable to perform [his] job due to severe head pain, dizziness, misspelling, panic attacks where unable to do anything, unable to lead people. Depressed. On medications." App. 566. LINA determined that he was disabled, paid him short-term benefits of $7003 per month from April 1998 until they ended in October 1998, and then agreed to pay him

long-term benefits. Under the terms of the plan, if Mr. Jewell's disability was the result of physical injury or illness, his long-term benefits would last until age 65. If, however, the disability was "caused or contributed to by" depression or mental illness, they would expire after two years. App. 129.

In July 1999, LINA informed Mr. Jewell that it was paying under the mental illness limitation and that his benefit payments would end on October 18, 2000. LINA terminated Mr. Jewell's benefits on that date, and Mr. Jewell did not challenge the decision to do so. Nearly two years later, around the time his wife abandoned him and left him penniless, Mr. Jewell requested reconsideration of his benefit termination and reinstatement of the benefit payments, writing that "[t]hose benefits ended due to a mis-diagnosis, from day one. I should have been diagnosed with physical, organic and traumatic brain injuries, and I had a stroke. This is the actual cause of the cognitive difficulties and symptoms, which have caused me to be disabled." App. 373. He submitted additional medical information, but LINA denied his appeal on January 31, 2003. Mr. Jewell submitted a second appeal on September 15, 2003, along with a list of head injuries he claims he had suffered in the past. LINA denied that appeal on November 7, 2003.

## B. Proceedings in Federal Court

Mr. Jewell then brought suit against LINA in state court in El Paso County, Colorado, for breach of contract and bad faith. On January 23, 2004, LINA removed the action to federal court, where it was converted to an ERISA claim arising under 29 U.S.C. § 1132(a)(1)(B). LINA moved for "judgment on the administrative record"on June 7, 2004.[1] Seeking to supplement the record beyond what LINA had compiled during the claim administration process, Mr. Jewell then moved for permission "to augment the record at the time of hearing with expert testimony." App. 658. The district court reserved ruling until specific evidence was presented, and on February 14, 2005, Mr. Jewell submitted three exhibits he sought to have included in the record.

The first exhibit was a February 7, 2005, letter from Bruce H. Peters, M.D., Mr. Jewell's neurologist, to Mark H. Kane, his attorney. The second was a February 9, 2005, letter from David U. Caster, M.D., Mr. Jewell's psychiatrist, to

---

[1] The Federal Rules of Civil Procedure contemplate no such mechanism as "judgment on the administrative record." *Cf.* R. Ct. Fed. Cl. 52.1(b). Parties should avoid the practice of requesting it, and courts should avoid purporting to grant it. Doing so often creates unnecessary work for an appellate court in deciding whether to construe such a motion *ex post* as one for a bench trial "on the papers," *e.g.*, *Hall v. UNUM Life Ins. Co of Am.*, 300 F.3d 1197, 1200 (10th Cir. 2002), or as one for summary judgment, *e.g.*, *Gannon v. Aetna Life Ins. Co.*, ___ F. Supp. 2d ___, No. 05 Civ. 2160, 2007 WL 2844869, at *6 (S.D.N.Y Sept. 28, 2007). *See Muller v. First Unum Life Ins. Co.*, 341 F.3d 119, 124 (2d Cir. 2003).

Mr. Kane. The third was an affidavit executed by Mr. Jewell on February 11, 2005. The district court accepted briefing from both parties on the admission of this extra-record evidence, and issued a written opinion on December 14, 2005. In its opinion, the court began by stating the applicable test for admission of extra-record evidence in *de novo* ERISA benefit denial reviews as put forth in our decision in *Hall v. UNUM Life Insurance Co. of America*, 300 F.3d 1197 (10th Cir. 2002). It found that the doctors' letters and Mr. Jewell's affidavit "do appear to include some information not contained in the administrative record that could assist the Court in understanding the medical issues in this case." App. 786. The district court then decided to admit the disputed exhibits.

On March 9, 2006, the district court held a hearing on the case, and granted judgment for Mr. Jewell. The court's oral opinion relied heavily on the letters of Drs. Peters and Caster. LINA then took this appeal, arguing that the extra-record exhibits should not have been admitted under the *Hall* standard and that the district court's consideration of them tainted its judgment, requiring reversal. We begin with a discussion of *Hall* and the rules it provides for admission of extra-record evidence and then consider, first, whether the doctors' letters should have been admitted; second, whether Mr. Jewell's affidavit should have been admitted.

## II.  DISCUSSION

### A.  Standard for Admission of Extra-Record Evidence

ERISA, a "comprehensive and reticulated statute," *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359, 361 (1980), governs employee benefit plans, including disability benefit plans such as LINA's.  When an individual covered by the plan makes a claim for benefits, the administrator gathers evidence, including the evidentiary submissions of the claimant, and determines under the plan's terms whether or not to grant benefits.  If the administrator denies the claim, the claimant may bring suit "to recover [the] benefits due to him under the terms of his plan."  29 U.S.C. § 1132(a)(1)(B).  Federal court is the exclusive forum for such suits, as ERISA preempts state laws relating to nearly all private employee benefit plans.  *Id.* § 1144(a).

Where, as here, a plan administrator did not have "discretionary authority to determine eligibility for benefits or to construe the terms of the plan," district courts will review a benefit denial *de novo*.  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  Although ERISA provides federal review for benefit denials, this does not entail that federal courts should "function as substitute plan administrators."  *Hall*, 300 F.3d at 1201 (quoting *Perry v. Simplicity Eng'g*, 900 F.2d 963, 966 (6th Cir. 1990)).  Consequently we have said that "the best way" for a district court "to implement ERISA's purposes in this

context is ordinarily to restrict de novo review to the administrative record"
compiled during the claim administration process, instead of taking new evidence,
hearing witnesses, and the like. *Id.* at 1202.

Confining review in general to the administrative record, and thus
encouraging the parties to develop the factual record as fully and as early as
possible, is important for a variety of reasons related to the goals of ERISA. For
instance, it may avert problems related to the loss or staleness of evidence, since
federal suits may be brought years after a disputed decision. More importantly,
the availability of a complete factual record makes it easier for the plan
administrator to come to an objectively correct, well-supported determination;
this, in turn, decreases both the likelihood of subsequent federal litigation and the
costs that would be attendant thereto. "ERISA was designed to promote internal
resolution of claims, . . . and to encourage informal and non-adversarial
proceedings," and these related aims are promoted by early and full development
of the factual record before the administrator, rather than the federal district
court. *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1022 (4th Cir.
1993) (quoting *Berry v. Ciba-Geigy Corp.*, 761 F.2d 1003, 1007 n.4 (4th Cir.
1985) (internal quotation marks and further citation omitted)). As we indicated in
*Hall*, a fully developed administrative record facilitates "the goal of prompt
resolution of claims by the fiduciary under the ERISA scheme." 300 F.3d at

1201.  And if litigation should ensue, requiring the parties to have developed the record during the claim administration process deters the practice of holding back evidence for presentation to the district court as a fallback or a "surprise."

In *Hall*, this Court first had occasion to consider the standard for admission of evidence from outside the administrative record in the *de novo* review of an ERISA plan administrator's benefit determination.  We made clear that "it is the unusual case in which the district court should allow supplementation of the record," 300 F.3d at 1203, and that only "exceptional circumstances could warrant the admission of additional evidence." *Id.*  Today we again emphasize that ERISA policy strongly disfavors expanding the record beyond that which was available to the plan administrator.  Supplemental evidence should not be used to take a second bite at the apple, but only when necessary to enable the court to understand and evaluate the decision under review.

A party seeking to introduce evidence from outside the administrative record bears a significant burden in establishing that he may do so.  In particular, (1) the evidence must be "necessary to the district court's de novo review"; (2) the party offering the extra-record evidence must "demonstrate that it could not have been submitted to the plan administrator at the time the challenged decision was made"; (3) the evidence must not be "[c]umulative or repetitive"; nor (4) may it be "evidence that 'is simply better evidence than the claimant mustered for the

claim review.'" *Hall*, 300 F.3d at 1203 (quoting *Quesinberry*, 987 F.2d at 1027).[2]

Even then, "district courts are not required to admit additional evidence when

these circumstances exist because a court 'may well conclude that the case can be

properly resolved on the administrative record without the need to put the parties

to additional delay and expense.'" *Id.*

For guidance in evaluating the necessity of extra-record evidence, we listed

in *Hall* several examples of the "exceptional circumstances" which "could warrant

the admission of additional evidence." *Id.* Those situations include

> claims that require consideration of complex medical questions or
> issues regarding the credibility of medical experts; the availability of
> very limited administrative review procedures with little or no
> evidentiary record; the necessity of evidence regarding interpretation
> of the terms of the plan rather than specific historical facts; instances
> where the payor and the administrator are the same entity and the
> court is concerned about impartiality; claims which would have been
> insurance contract claims prior to ERISA; and circumstances in
> which there is additional evidence that the claimant could not have
> presented in the administrative process.

*Id.* (quoting *Quesinberry*, 987 F.2d at 1027). These are not exceptions to the *Hall*

rule; they are merely examples of circumstances that might militate in favor of a

finding of necessity. The existence of one or more of these circumstances does

not make extra-record evidence automatically admissible, for if it did, then

---

[2] Most often it is the claimant who seeks to introduce new evidence in the review of a benefit denial. But the same standard will apply to new evidence offered to the district court by a plan administrator. *See Hall*, 300 F.3d at 1202.

supplementation of the record would not be limited to unusual cases or extraordinary circumstances. This would "undermin[e] the goal of not making district courts 'substitute plan administrators.'" *Id.* at 1206 (quoting *Quesinberry*, 987 F.2d at 1025). District courts must conduct analysis case-by-case to determine whether all four prongs of the *Hall* test are met.

This Court reviews the district court's ultimate determination under *Hall* for an abuse of discretion.

## B.  Letters of Dr. Peters and Dr. Caster

The district court's entire explanation of its decision to admit the 2005 letters of Drs. Peters and Caster was the brief statement that they "do appear to include some information not contained in the administrative record that could assist the Court in understanding the medical issues in this case." App. 786. That thin basis, however, is insufficient for admitting evidence under *Hall*, and a full analysis according to our precedent does not support admission of the letters either.

"In making a discretionary decision, a court must present an explanation for its choice sufficient to enable a reviewing court to determine that it did not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its discretion." *Patton v. MFS/Sun Life Fin. Distribs., Inc.*, 480 F.3d 478, 491 (7th Cir. 2007); *see also, e.g.*, *O'Toole v. Northrop Grumman*

*Corp.*, 499 F.3d 1218, 1226 (10th Cir. 2007) (district court must explain its discretionary denial of prejudgment interest); *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1329 (10th Cir. 1998) (district court must provide "adequate explanation" of its discretionary denial of costs). Here, the district court accurately recited the terms of the *Hall* test, but its conclusory analysis failed to explain how the doctors' letters might meet these requirements for admissibility.

To be sure, the district court stated that the letters "could assist the Court" in its review. App. 786. But evidence that is potentially helpful is not perforce "*necessary* to the district court's de novo review," *Hall* 300 F.3d at 1203 (emphasis added). We discuss the nuances of the term "necessary" below, *see infra* § II.B.1, but suffice it here to say that the word connotes a stronger requirement than the mere possibility of utility. And although the district court's opinion shows that the letters were not merely "cumulative or repetitive" of the other evidence already in the record, *Hall*, 300 F.3d at 1203, it does nothing to indicate that the other factors of the *Hall* test were met. Specifically, the court did not explain why this evidence "could not have been submitted to the plan administrator at the time the challenged decision was made," or why it was not "'simply better evidence than the claimant mustered for the claim review.'" *Id.* (quoting *Quesinberry*, 987 F.2d at 1027). Without more than its meager finding

that the letters might perhaps be useful, the district court should not have admitted them.

If our own analysis of the letters showed that they were admissible on a basis the district court did not provide, "we may nonetheless affirm . . . 'in the interest of efficiency and judicial economy.'" *Id.* at 1207 (quoting *Ohlander v. Larson*, 114 F.3d 1531, 1538 (10th Cir. 1997)); *see also Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1116 (10th Cir. 2004). Applying the *Hall* test ourselves further persuades us that the letters' admission was an abuse of discretion.

### 1. Necessity of Extra-Record Evidence

First, extra-record evidence must be "necessary to the district court's de novo review." *Hall*, 300 F.3d at 1203. "Necessary" is a term with a spectrum of meanings. At one end, it may "import an absolute physical necessity, so strong, that one thing, to which another may be termed necessary, cannot exist without that other"; at the opposite, it may simply mean "no more than that one thing is convenient, or useful, or essential to another." *M'Culloch v. Maryland*, 4 Wheat. (17 U.S.) 316, 413 (1819); *cf. Colautti v. Franklin*, 439 U.S. 379, 400 (1979) ("necessary" in abortion statute suggested "indispensable"); *Comm'r v. Tellier*, 383 U.S. 687, 689 (1966) ("necessary" in tax statute meant "appropriate and helpful"). Neither end of this spectrum, we think, is appropriate here.

-12-

Too strict a view of necessity is foreclosed by our very holding in *Hall*.

There, we allowed admission of evidence regarding two surgeries which took

place after the closing of the administrative record. The decisive issue in *Hall*

was the degree of the plaintiff's enduring pain, and we agreed with the district

court that the fact the plaintiff chose to undergo the surgeries was strong evidence

that her pain was "real and unrelenting." 300 F.3d at 1206 (internal quotation

marks omitted). The evidence was not, however, absolutely indispensable to

reviewing the plan administrator's decision. On the other hand, "necessary"

evidence in this context cannot be evidence that is merely "convenient, or useful,"

or "conducive to the end" of conducting review. *Cf. M'Culloch*, 4 Wheat. at 413,

415. If this were what the term meant, the admission of extra-record evidence

would not be limited to unusual cases or extraordinary circumstances, as we

require. *See Hall*, 300 F.3d at 1206 (quoting *Quesinberry*, 987 F.2d at 1025).[3]

---

[3] In *Ray v. Unum Life Insurance Co. of America*, 314 F.3d 482 (10th Cir. 2002), we reversed a district court's abuse-of-discretion review of an ERISA benefit denial and ordered the court to perform *de novo* review as required under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). Under abuse-of-discretion review, a district court is unable to supplement the administrative record. *See Hall*, 300 F.3d at 1201. We accordingly observed that "[o]ur remand allows the district court to consider such additional evidence as in its discretion it finds *necessary* for adequate de novo review, including court-appointed expert reports if it determines them *helpful*." *Ray*, 314 F.3d at 488 (emphasis added). Because no issue of supplementation of the record was before the *Ray* court, this statement was dictum. In any event, we have never determined, and do not now decide, whether the *Hall* test properly applies to extra-record evidence from

(continued...)

-13-

Rather, the term "necessary," as we used it in *Hall*, must be "harmonized with its context." *Armour & Co. v. Wantock*, 323 U.S. 126, 130 (1944). We are guided by our qualification in *Hall*, following the Fourth Circuit's opinion in *Quesinberry*, that extra-record evidence may be admitted when "'necessary to conduct an *adequate* de novo review of the benefit decision.'" *Hall*, 300 F.3d at 1202 (emphasis added) (quoting *Quesinberry*, 987 F.2d at 1025). If, for instance, the administrator based its decision on information not in the record—perhaps on principles generally known within the medical community—the district court likely could not meaningfully review the decision without the admission of that evidence. Or if the court cannot understand abstruse medical terminology central to the issues of a case, the claimant may supplement the record with explanatory evidence. Likewise, if the administrator simply neglected to include in the record exhibits the claimant had submitted to it, those may be offered to the district court. (Even "necessary" evidence, however, may only be admitted if the other three prongs of the *Hall* test are satisfied. The consequences of a record

[3](...continued)
*court-appointed* experts. The incentives, and the policy considerations favoring early and full development of the administrative record, are not the same for the district judge as for the ERISA litigant. (We subsequently affirmed the district court's decision, upon remand, not to appoint an expert and to render judgment on the administrative record alone. *Ray v. UNUM Life Ins. Co. of Am.*, 224 F. App'x 772, 780 (10th Cir. 2007).)

insufficient to allow meaningful review will be borne by the party responsible for the insufficiency.)

Mr. Jewell suggests that admission of the letters of Dr. Peters and Dr. Caster was justified by one or more of the "exceptional circumstances" which we said in *Hall* "could warrant the admission of additional evidence." 300 F.3d at 1203. First, Mr. Jewell argues that the proper diagnosis of his disorder is a "complex medical question" and requires additional explanatory evidence. Appellee's Opening Br. 32. The letters, however, provide no assistance to a court seeking to resolve on *de novo* review the medical complexities of the case. They state a diagnosis, but there are other diagnoses already in the record—from Dr. Peters and Dr. Caster as well as from four other doctors. The letters do not elucidate the medical principles or terminology, nor offer any account of how the facts support the diagnosis. The letters are, in a sense, black boxes: facts go in, diagnoses come out. When doctors offer new or revised diagnoses several years after the fact, one would expect to see explanations of what has changed and why. A doctor's mere announcement of a new conclusion is not evidence genuinely directed toward helping a court engage in *de novo* review of the decision previously made.

Second, Mr. Jewell argues that, by disbelieving what he claims was his doctors' diagnosis of an organic disorder, LINA put the doctors' credibility at

issue. The question of the credibility of an expert—as opposed to the question of the reliability of the expert's conclusions—concerns whether the expert is believable. *See, e.g.*, *Washington v. Schriver*, 255 F.3d 45, 52 (2d Cir. 2001). Credibility embraces such matters as professional qualifications, mental capacity, bias and interest, and bad moral character. So, for instance, the size of an expert's fee or the fact that he only testifies for plaintiffs in civil cases may be relevant to his credibility. *See* Edward J. Imwinkelried, *The Silence Speaks Volumes*, 1998 U. Ill. L. Rev. 1013, 1034–35. Whether, as is important here, these doctors were correct, or whether their conclusions were based on sufficient evidence and sound medical science, bears on their credibility in no genuine sense. And although LINA's brief before this Court contains a few vague references to the doctors' credibility—calling them "loyal" to Mr. Jewell and stating that "for reasons we do not know, a few doctors agreed to modify their diagnoses," Appellant's Opening Br. 39, 63—those comments were in reaction to the recent letters; the letters were not responsive to any pre-existing challenges to the doctors' credibility. Even if they were, the statements and diagnoses contained in these letters have nothing to do with the doctors' qualifications, bias or interest, or the like. We cannot conclude that consideration of these letters would be at all helpful to evaluating the doctors' credibility, properly understood; still less that the district court could not conduct meaningful review without them.

-16-

Mr. Jewell further argues that the letters are necessary to prove that his disability is ongoing. Dr. Caster's letter, in particular, indicates that, although Mr. Jewell's financial situation had improved by the time of writing, nevertheless "this man can not be gainfully employed," and "his [sic] is unable to adequately function, not only because of poor cognitive processing and poor attention and difficulties around cognition, but also because of a worsening at these times of his depression." App. 744. LINA, however, does not contest that Mr. Jewell is disabled, or indeed that he has been since it began paying him benefits in 1998. The issue in this case is the cause of his disability, not its duration. Nor has Mr. Jewell presented any evidence or argument tending to show that the ongoing character of his disability would be proof of an organic cause. Because the necessity of extra-record evidence must be established by its proponent, *see Hall*, 300 F.3d at 1203, Mr. Jewell has not met his burden with respect to this argument.

### 2. *Inability to Present Evidence During Administrative Process*

Second, the party attempting to bring evidence before the district court which it did not offer to the plan administrator must "demonstrate that [the evidence] could not have been submitted . . . at the time the challenged decision

-17-

was made." *Hall*, 300 F.3d at 1203.[4]  During the claims administration process a claimant must come forward with all evidence which he knows or should know. *See Davidson v. Prudential Ins. Co. of Am.*, 953 F.2d 1093, 1095 (8th Cir. 1992). By "evidence," we of course mean not just the particular document or testimony that a claimant might offer to the district court, but its substance.

In this case, then, it is not enough for Mr. Jewell to demonstrate that he could not have offered to LINA the particular letters in question.  The letters were written some thirteen months after this litigation was commenced in state court, so meeting that requirement would be trivial.  Rather, he must show that the information contained in those letters was not of a substance known to him, or which should have been known to him, during the administrative process.  We agree with the Eighth Circuit that where "additional evidence," now believed by the claimant to be necessary to the benefit determination, is "created *after* litigation had begun, [but] was known or should have been known to [the claimant] *during* the administrative proceedings," the claimant's subsequent proffer of that evidence "amounts to nothing more than a last-gasp attempt to quarrel with" the administrator's benefit determination, and should not be permitted.  *Id.* (emphasis added).

---

[4] Alternatively, an ERISA claimant may demonstrate that he did submit the evidence to the administrator, and that due to the administrator's default it was not included in the record.

In the first disputed letter, dated February 7, 2005, Dr. Peters states that he had conducted three examinations of Mr. Jewell: on December 9, 1999, November 11, 2002, and January 13, 2003. (Dr. Peters' notes from those examinations were already in the administrative record compiled by LINA.) Mr. Jewell has offered no reason why he could not have solicited this explanatory letter promptly, instead of waiting two years after the last examination to do so. Nor do the contents of the letter seem to be outside the scope of information that was known or should have been known to Mr. Jewell during the administrative process. The only new matter of real substance in the letter is the claim that Mr. Jewell could be diagnosed with complex partial seizure disorder, apparently an organic defect, on the basis of his clinical history alone, and that "any type of seizure is never diagnosed on the basis of [an] electroencephalogram." App. 734. But in the same letter Dr. Peters states that this clinical-history method of diagnosing seizures is "well-known and even axiomatic in the neurologic community." App. 734. If so, it is information Mr. Jewell should have known, and could have presented to the plan administrator, long before 2005. Dr. Peters' letter, therefore, fails under this prong of the *Hall* admissibility test. *See also Davidson*, 953 F.2d at 1095.

The second disputed letter, that of Dr. Caster dated February 9, 2005, begins by reprinting verbatim the six paragraphs of a 2002 letter from Dr. Caster

which was already in the administrative record. The next paragraph contains information relating to the period up to June 2003, which could have been presented to LINA during Mr. Jewell's administrative appeals. The final paragraph, however, contains a statement that Mr. Jewell had suffered grand mal seizures in March 2003 and July 2004, names the medicines Mr. Jewell was subsequently prescribed "specifically to treat seizure activity and other manifestations of his organic mental disorder," and opines that Mr. Jewell's condition continued to be completely disabling up to the time the letter was written. App. 743. The first seizure was reported by Dr. Caster elsewhere in the record in an April 18, 2003 note. The rest, however, was new information concerning events that had not occurred by the time the administrative record was closed; the second seizure and subsequent treatment history could not have been presented to LINA during the claim administration. These portions of Dr. Caster's letter accordingly would survive the second prong of the *Hall* test.

### 3. Cumulative and Repetitive Evidence

In an ordinary trial, evidence, even though relevant, may be excluded if "its probative value is substantially outweighed . . . by considerations of . . . needless presentation of cumulative evidence." Fed. R. Evid. 403. The trial judge's discretion is wide, because cumulative evidence is excluded in the interests of trial efficiency, time management, and jury comprehension. *United States v.*

*Socony-Vacuum Oil Co.*, 310 U.S. 150, 230 (1940). Under *Hall*, however, a judge *must* refuse admission to any extra-record evidence that is "[c]umulative or repetitive." 300 F.3d at 1203. In this context, the concern is not only that cumulative evidence is a waste of time, but also, as discussed above, that all relevant evidence should be developed and presented to the plan administrator as early as possible. Parties may not easily be able to judge at the administrative stage whether evidence will be important or merely cumulative. Accordingly, under *Hall*, the exclusion of new, cumulative evidence is not merely discretionary, so as to avoid waste of time; it is mandatory, to spur the presentation of *all* potentially relevant evidence to the administrator.

Evidence is cumulative if its probative effect is already achieved by other evidence in the record; that is, "if the small increment of probability it adds may not warrant the time spent in introducing it." *United States v. Davis*, 40 F.3d 1069, 1076 (10th Cir. 1994) (internal quotation marks and citation omitted). It is distinguished from corroborating evidence, which buttresses weak or assailable evidence, often by "establishing data which refute possible discrediting circumstances." 2 John Henry Wigmore, A Treatise on the Anglo-American System of Evidence in Trials at Common Law § 874, at 235 (1923). New evidence need not be identical to previous evidence to be cumulative, but only of

the same general substance, related to the same fact or point, and of little additional probative value.

Although large portions of the letters of Dr. Peters and Dr. Caster were cumulative, we cannot conclude that the letters were cumulative *in toto*. Mr. Jewell's claim of an organic seizure disorder was not "established" by the evidence in the administrative record to the point of needing no further support—indeed, LINA advances that, without the disputed letters, the court should find that Mr. Jewell failed to prove the existence of an organic disorder at all. The additional grand mal seizure Dr. Caster mentions, as well as the seizure medication, is corroborative evidence.

Likewise, we cannot say that the "well-known and even axiomatic" proposition Dr. Peters invokes—that no type of seizure is ever diagnosed on the basis of an electroencephalogram—was already established in the administrative record. True, the record contained Dr. Peters' 2002 clinical note commenting that "it is not demanded that a diagnosis of seizure disorder be documented by an electroencephalogram but it is a helpful certifying finding." App. 293. But Dr. Peters' clinical notes also reveal that in 1999 he ordered an EEG to "make a decision" about whether "this man has complex partial seizures," App. 325, and that in 2002 he did so once more, noting that "the electroencephalogram is again of great importance in assisting with differentiation of a primarily functional from

a primarily organic circumstance." App. 294. (These EEGs showed no significant abnormalities.) There is obvious tension between Dr. Peters' various statements, and the 2005 letter can be read as resolving this tension by repudiating some of the earlier statements—rejecting the "great importance" of the EEG and the notion that one could "make a decision" about complex partial seizure disorder on the basis of an EEG, after the EEGs turned out not to "certify[]" the doctor's suspicions. The letter reinforces the earlier claim that although an abnormal EEG might be "helpful" it is "not demanded" for a diagnosis. In this sense, whatever other questions this letter may raise, we cannot say that it was cumulative of other facts "established" in the administrative record.

*4. "Simply Better Evidence"*

Finally, *Hall* requires that extra-record evidence presented to a district court not be "'simply better evidence than the claimant mustered for the claim review.'" 300 F.3d at 1203 (quoting *Quesinberry*, 987 F.2d at 1027). We have not yet explained what this requirement entails. We think it is clear from the context of *Hall* that new evidence which is *of the same kind* as evidence in the administrative record, but simply more persuasive, is not admissible. New evidence must be of a significantly different type than existing evidence to meet the standard of *Hall*.

-23-

In *Hall*, we permitted the introduction of extra-record evidence of the plaintiff's two subsequent surgeries because "the probative value of the surgeries was far greater than the probative value of the evidence of Hall's pain in the administrative record," and so the surgeries were of "obvious importance . . . to the question of whether she was disabled." 300 F.3d at 1207. The issue of Ms. Hall's disability turned on the extent of her pain, a subjective matter which is not susceptible of objective measurement, and the only information in the administrative record from which answers could be gleaned were the statements of Ms. Hall and her doctors, plus the fact of Ms. Hall's heavy use of pain medication. *See Hall v. Unum Life Ins. Co. of Am.*, No. 97-CV-1828, 1999 WL 33485551, at *2–*7 (D. Colo. Nov. 1, 1999). And on this subjective question, Ms. Hall's credibility was at issue, as her "demeanor and manner while giving her testimony suggest[ed] that she was exaggerating her difficulty." *Id.* at *8. Against this background, then, her choice to undergo pain-relieving surgeries that removed muscle tissue and her first rib, *id.* at *7, constituted verifiable and hard-to-manipulate corroborating evidence of a kind to be found nowhere else in the record. As the district court noted, "[i]t is highly unlikely that any person would undergo those procedures unless the pain she experienced was real and unrelenting." *Id.* The surgeries were more than merely better or more convincing versions of Ms. Hall's testimony and the conclusions of her doctors.

-24-

The letters at issue in this case do not meet this standard. Above, we observed that Dr. Peters' assertion of the insignificance of the EEG in diagnosing complex partial seizure disorder appears to repudiate some of his earlier statements and actions. It might, if true, be stronger or clearer evidence than Mr. Jewell had previously mustered of what method should be used to diagnose his problems. It is certainly more emphatic. To this extent, however, it is "simply better evidence"—evidence perhaps more favorable or more persuasive but certainly not different in kind—than what was in the administrative record. The record already contained Dr. Peters' contemporaneous views, and extra-record evidence cannot be used to edit or redo the record. *Hall* forbids precisely this sort of second bite at the apple. Similarly, although Dr. Peters' letter states more emphatically than did his previous notes that he believes Mr. Jewell's disorder to be organic in nature, this again cannot not meet the *Hall* standard.

As to Dr. Caster's letter, the reference to a 2004 seizure and to Mr. Jewell's seizure medication are not enough to make the letter admissible. There was already evidence in the record of the possibility that Mr. Jewell had had seizures. Dr. Peters reported as early as November 9, 1999 that Mr. Jewell "has no history of generalized seizures," but that "I am quite concerned that this man has complex partial seizures." App. 323, 325. His physician Dr. Lisa Dunham had recorded on November 6 and November 14, 2002, that Mr. Jewell "reports

-25-

recently having seizure type activity" and that he had had "episodes suspicious for seizure disorder." App. 180, 182. Dr. Peters wrote on November 11, 2002, that Mr. Jewell "reports having episodes where he has found himself where he hadn't known he had been (once in the basement) and thinks that he must have had a seizure." App. 293. Another doctor, Patricia Fodor, wrote in a December 3, 2002 clinic note that Mr. Jewell had a "history of seizures." App. 321. Dr. Caster recorded on April 18, 2003 that "[i]t is apparent that [Mr. Jewell] had a seizure about a month ago." App. 254. There was in the record, as well, some contradictory evidence: most or all of these seizures appear to have occurred after a May 12, 2002 motorcycle accident which left Mr. Jewell unconscious, with, as Dr. Caster put it, "fairly significant physical injuries with evidences [sic] of a head injury." App. 252. Even assuming that the 2004 seizure and use of seizure medication reported in Dr. Caster's disputed letter is evidence that Mr. Jewell's disability, which manifested itself in 1998, was organic in nature, the letter would be "simply better evidence" of conditions already documented in the record. Finally, Dr. Caster's statements that Mr. Jewell's finances had improved but that his disability continued, to the extent they are relevant, cast no light on the medical provenance of his condition.

* * * * *

In sum, the district court offered no indication that the extra-record letters of Dr. Peters and Dr. Caster met the requirements we identified in *Hall* for admissibility. Neither has Mr. Jewell on appeal met his burden of showing that those requirements were satisfied. We therefore hold that the admission and consideration of these letters was an abuse of the district court's circumscribed discretion under *Hall*.

## C. Affidavit of Mr. Jewell

The district court admitted Mr. Jewell's affidavit saying only that, along with the Peters and Caster letters, it "could assist the Court in understanding the medical issues in this case." App. 786. We cannot agree. Mr. Jewell made out the affidavit, apparently, because "[i]t is my understanding that my credibility has come under attack in arguments present [sic] by the Defendant." App. 746. In the affidavit, Mr. Jewell briefly recounts the history of his employment at Sprint and his disability, and he states that although his condition has not "substantially changed" since October 2000 it "may have deteriorated." App. 748. He further denies that he "fooled" his doctors into changing their diagnosis or that the impecuniousness caused by his divorce was what motivated him to reopen his benefits claim after nearly two years. App. 747–48.

This affidavit does not meet the requirements imposed by *Hall*. The substance of the affidavit was entirely within Mr. Jewell's knowledge during the

-27-

claim administration process, and the affidavit contains no information relating to events occurring after September 15, 2003, the date of Mr. Jewell's final administrative appeal.[5]  There is nothing in the affidavit that "could not have been submitted to the plan administrator at the time the challenged decision was made." *Hall*, 300 F.3d at 1203.  Nor was the affidavit "necessary" to an adequate review by the district court.  It has no particular relevance to "understanding the medical issues in this case," App. 786, so the district court's reason for accepting it fails.  The only arguable relevance of the affidavit to any issue in the case might be as an attempt to bolster the credibility of the plaintiff's doctors.  In that respect, the affidavit fails as well, both because the credibility of Mr. Jewell's doctors has never been seriously questioned and because the minimal additional assurance of their credibility that this affidavit would provide is not "necessary to the district court's de novo review." *Hall*, 300 F.3d at 1203.  Under the strict standard of *Hall*, the district court's decision to admit Mr. Jewell's affidavit was an abuse of discretion.

### D.  Harmless Error

Because we conclude that the admission of the three extra-record exhibits Mr. Jewell offered was erroneous, we must next consider whether that error was

---

[5] Certain statements relating to later events, such as the passage quoted above, are merely prefatory and therefore immaterial to our analysis.

harmless.  *See Hall*, 300 F.3d at 1207 n.4; *Tester v. Reliance Std. Life Ins. Co.*, 228 F.3d 372, 377 n.4 (4th Cir. 2000).  The district court's brief oral opinion rendering judgment on the record against LINA shows that the error was not harmless.  A substantial part of the court's analysis was directed to the erroneously admitted letters; the district judge referred several times to the specific findings of Drs. Peters and Caster, each time citing only those letters.  App. 833–34.  The court continued:

> So we have these very strong letters by two doctors who appear to be strong in their opinions and who appear to really have a great understanding of this area.  I'm not a specialist.  Neither of the attorneys are specialists or even doctors.  Or maybe you are, but I don't know that.  And all we can do in a case like this is rely on the understanding of the doctors.
> And I think the two main doctors that we must rely on are Peters and Caster; the neurologist and psychiatrist . . . .

App. 835.  The district court's analysis of the entire remaining corpus of the administrative record amounted to no more than passing mention.

Accordingly, it appears that the erroneously admitted letters had a substantial effect on the district court's disposition of the case and cannot be dismissed as harmless.  We must therefore reverse the judgment below.

### E.  Remand

LINA suggests that this Court, having reversed, should dispense with remand and conduct our own *de novo* review of the benefit determination—in

other words, that we should play the role of the district court. If doing so is within the discretion of a court of appeals at all, we should exercise that discretion sparingly. We decline LINA's invitation to conduct review of the merits of the case on the basis of the appellate briefs and records, and so remand to the district court for *de novo* review based on the administrative record.

## III. CONCLUSION

For these reasons, the judgment of the United States District Court for the District of Colorado is **REVERSED** in No. 06-1272, and the matter **REMANDED** to that court for further proceedings not inconsistent with this opinion. Mr. Jewell's cross-appeal, No. 06-1288, is **DISMISSED** as moot.