FILED
United States Court of Appeals
Tenth Circuit

February 18, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PATRICK GARRETT,

      Plaintiff-Appellee,

v.

PRINCIPAL LIFE INSURANCE
COMPANY,

      Defendant-Appellant.

No. 13-6087
(D.C. No. 5:09-CV-01378-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **LUCERO** and **BALDOCK**, Circuit Judges, and **BRORBY**, Senior Circuit Judge.

This is an appeal by defendant Principal Life Insurance Company (Principal) from the district court's orders that reversed Principal's decision to deny plaintiff Patrick Garrett's claim for medical benefits and awarded Mr. Garrett the full amount of his claim. We have jurisdiction under 28 U.S.C. § 1291 and affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## Background

Mr. Garrett has been insured since 1998 through a group medical benefits policy issued to his employer as part of an employee benefits plan under the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001-1461.  A group policy issued by Principal in February 2007 provided coverage for inpatient hospital alcohol abuse treatment.  In conjunction with its issuance of the policy, Principal supplied "Policyholder Certificates," whose purpose were described in the policy itself as:  "The Certificates will be evidence of insurance and will describe the basic features of the coverage.  They will not be considered a part of this Group Policy." Aplt. App. Vol. 4 at 740.

In June 2008, Principal sent the employer a new "Group Booklet-Certificate." *Id*. Vol. 1 at 39.  The booklet-certificate purported to exclude inpatient coverage for alcohol abuse treatment, but stated:  *"Member rights and benefits are determined by the provisions of the Group Policy.*  This booklet briefly describes those rights and benefits.  It outlines what you must do to be insured.  It explains how to file claims. It is your certificate while you are insured." *Id*. at 41 (emphasis added).  As explained below, Principal did not issue a "new" group policy until October 2009 – more than six months after Mr. Garrett filed his claim for medical benefits.

Mr. Garrett went to Cliffside Malibu (Cliffside) in March 2009 for inpatient alcohol abuse treatment.  When the facility inquired about medical coverage, Principal told Cliffside that it did not meet the definition of a hospital and declined to

approve the costs. Nonetheless, at the conclusion of Mr. Garrett's treatment in April, Cliffside submitted a claim to Principal for $65,000. Once again, Principal denied the claim on the grounds that Cliffside was not a covered facility.

Mr. Garrett's lawyer wrote to Principal in September 2009 asserting that Cliffside met the definition of a hospital. He also questioned Principal's failure to promptly, fully, and honestly respond to Mr. Garrett's claim. Later that month, Principal admitted that Cliffside was a covered facility, but again denied coverage, this time on the ground that the "new" policy excluded coverage for inpatient alcohol abuse treatment.

Because Mr. Garrett had never received a copy of the "new" policy, his lawyer asked Principal to send him a copy. This request set off a chain of conflicting explanations within the company as to how to respond. One employee acknowledged that the most recent policy that was actually issued and sent to the employer was in February 2007. When a further review disclosed that a new "Group Booklet-Certificate" had been sent to the employer in 2008, a different employee asked whether Principal issues booklets without issuing an updated policy. In response, another employee told her that the policy was amended in 2008 to "add employees . . . [but] [t]here would have been no change to the Policy so that is why a Policy was not ordered. Booklets were ordered, I believe, for the new employees. . . . Just make sure the group knows that there was no change in the benefits for the group." *Id*. Vol. 3 at 672.

The following day, a different employee decided that Principal should apply the limitation in the "new" policy to Mr. Garrett's claim, but realized the potential problem in relying on the terms of a policy that had never been issued. To that end, she suggested that the company "craft a letter . . . to explain where this limitation is in the policy itself, or we may need to provide [a] rationale as to why it isn't [in the policy] but in [the] booklet only." *Id*. at 676. Yet another employee acknowledged the need to find out "why the 'official document' does not include the limitation." *Id*. at 675.

On October 27, 2009, Principal wrote to Mr. Garrett's lawyer that its failure to issue a new policy in conjunction with the booklet "was an oversight." *Id*. Vol. 4 at 848. "Once we identified this oversight, we issued the Group Policy and sent it to the Group Policyholder . . . on October 16, 2009." *Id*. Principal explained that it had "inadvertently used the wrong denial reason when denying coverage," and was upholding its denial for treatment at Cliffside on the ground that Mr. Garrett had or should have received a copy of the 2008 booklet that contained the limitation on inpatient alcohol treatment. *Id*. at 849.

Mr. Garrett filed an action challenging Principal's denial of benefits under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). After Principal submitted the administrative record to the district court, the parties submitted briefing regarding their respective positions on the benefit determination. The court entered an order in which it found that Mr. Garrett was entitled to benefits under the 2007 policy. The court directed

the parties to try to reach an agreement as to the amount owed and reserved the issue of attorney fees and prejudgment interest.[1]  The parties could not agree on an amount, and following additional briefing, the court entered an order that Mr. Garrett was entitled to $65,000 in medical benefits.  Principal appeals both orders.

**Analysis**

We address first Principal's decision to deny benefits.  *See Holcomb v. Unum Life Ins. Co. of Am.*, 578 F.3d 1187, 1192 (10th Cir. 2009) ("We review a plan administrator's decision to deny benefits to a claimant, as opposed to reviewing the district court's ruling").  In conducting our review, we are "limited to the administrative record – the materials compiled by the administrator in the course of making his decision."  *Id*. (internal quotation marks omitted).  In the district court the parties agreed that Principal's decision to deny benefits should be reviewed de novo, and on appeal they do not argue for a different standard of review.

Principal argues that the 2008 booklet-certificate should control what is and is not a covered medical benefit.  Whether we view Principal's argument as advocating that the 2007 policy was amended by the booklet or that the booklet controls, the result is the same – we conclude that the 2007 policy governs.

First, a summary plan description should not be enforced over the terms of a plan.  *CIGNA Corp. v. Amara*, ____ U.S. ____, 131 S. Ct. 1866, 1878 (2011); *see*

---

[1]    The district court later entered an order for attorney fees and prejudgment interest. in May 2013.  Principal's appeal from that order is addressed separately in our order and judgment in Appeal No. 13-6142.

- 5 -

*also Eugene S. v. Horizon Blue Cross Blue Shield of N.J.*, 663 F.3d 1124, 1131 (10th Cir. 2011) (interpreting *Amara* as standing for the proposition that "the terms of [a summary plan description] are not enforceable when they conflict with governing plan documents").

Second, there is no evidence that the 2007 policy was amended. The policy provided that it could be amended or changed as follows: (1) to comply with laws or regulations; (2) to provide for consistent application of the policy's provisions; or (3) by written agreement between Principal and the employer. Aplt. App. Vol. 4 at 737. As to the only arguably relevant reason, there is no evidence of any agreement to amend. Principal nonetheless argues that the employer consented to an amendment by continuing to pay its premiums after it received the "Group Booklet-Certificate" in June 2008. However, Principal cites no authority establishing that the policy could be amended by any means other than those stated in the policy itself.

Next, citing *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73 (1995), Principal argues that "ERISA generally permit[s] employers or other plan sponsors to freely adopt, modify, or terminate welfare plans." Aplt. Opening Br. at 14. *Curtiss-Wright*, however, is not relevant because it concerned an employee's purported ERISA claim against an employer who had unilateral authority to amend the employee benefit plan and who intended to do so. 514 U.S. at 75, 79.

We turn now to the district court's order that granted Mr. Garrett the entire amount he claimed as benefits. In its district court briefing on this issue, Principal argued for the first time that it was entitled to a significant reduction in the amount owed because: (1) Cliffside was not a preferred provider; (2) Mr. Garrett had not met his deductible; and (3) Mr. Garrett's hospitalization should have been limited to ten days. In conjunction with its new rationale, Principal attempted to supplement the administrative record with a pricing affidavit and a third-party pricing analysis. The court concluded that because Principal "bases its calculation of benefits owed to [Mr. Garrett] on rationales not relied on by the claims administrator below and has failed to show special circumstances warranting the supplementation of the administrative record, the [c]ourt will not rely on [Principal's] calculation of benefits owed to [Mr. Garrett]." *Id*. at 169.

We conclude that the district court properly declined to consider Principal's new arguments. "[W]hen reviewing a plan administrator's decision to deny benefits, we consider only the rationale asserted by the plan administrator in the administrative record." *Spradley v. Owens-Ill. Hourly Emps. Welfare Benefit Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012) (internal quotation marks omitted). This rule furthers the goal of ERISA to allow plan administrators and beneficiaries to "hav[e] a full and meaningful dialogue regarding the denial of benefits . . . [and to prevent the plan administrator from] treat[ing] the administrative process as a trial run and offer[ing] a

post hoc rationale in district court." *Id*. at 1140-41 (internal quotation marks

omitted).

As to the district court's refusal to consider Principal's request to supplement

the record, we have recognized that "the best way to implement ERISA' purposes

. . . is ordinarily to restrict de novo review to the administrative record." *Hall v.*

*Unum Life Ins. Co. of Am.*, 300 F.3d 1197, 1202 (10th Cir. 2002). Thus, "it is the

unusual case in which the district court should allow supplementation of the record."

*Id*. at 1203. "A party seeking to introduce evidence from outside the administrative

record bears a significant burden in establishing that he may do so." *Jewell v. Life*

*Ins. Co. of N. Am.*, 508 F.3d 1303, 1309 (10th Cir. 2007). Among other things, "the

evidence must be necessary to the district court's de novo review . . . [and] the party

offering the extra-record evidence must demonstrate that it could not have been

submitted to the plan administrator at the time the challenged decision was made."

*Id*. (internal quotation marks omitted).

We review the district court's determination whether to supplement the

administrative record for an abuse of discretion. *Id*. "In making a discretionary

decision, a court must present an explanation for its choice sufficient to enable a

reviewing court to determine that it did not act thoughtlessly, but instead considered

the factors relevant to its decision and in fact exercised its discretion." *Id*. at 1310

(internal quotation marks omitted). Here, the court accurately recited the relevant

*Hall* factors and explained why the administrative record should not be supplemented.  We see no abuse of discretion.

The judgment of the district court is affirmed.

Entered for the Court


Wade Brorby
Senior Circuit Judge