**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 18, 2021**

**Christopher M. Wolpert**
**Clerk of Court**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOANN SANDY HARRIS;
BENJAMIN HARRIS,

     Plaintiffs - Appellants,

v.

REMINGTON ARMS COMPANY,
LLC,

    Defendant - Appellee.

No. 19-6051

_____

**Appeal from the United States District Court**
**for the Western District of Oklahoma**
**(D.C. No. 5:15-CV-01375-SLP)**
_____

Glenn J. Shrader, Jr., The Shrader Firm, Oklahoma City, Oklahoma
(Michael M. Blue, Blue Law, Oklahoma City, Oklahoma, with him on the
briefs), for Plaintiffs-Appellants.

Dale G. Wills, Swanson, Martin & Bell, Chicago, Illinois (Andrew A.
Lothson, Swanson, Martin & Bell, Chicago, Illinois, Robert H. Alexander,
Jr. and Robert W. Ivy, The Law Office of Robert H. Alexander, Jr. P.C.,
Oklahoma City, Oklahoma, with him on the brief), for Defendant-Appellee.
_____

Before **BACHARACH**, **MURPHY**, and **MORITZ**, Circuit Judges.
_____

**BACHARACH**, Circuit Judge.
_____

This is a product liability case involving a rifle manufactured by Remington Arms Company, LLC. The rifle allegedly misfired (without anyone pulling the trigger) and injured Ms. Joann Harris. Ms. Harris and her husband sued Remington, attributing the injury to a defect in the rifle. In support, the Harrises proffered testimony by an expert witness who had explained how the rifle could have fired without anyone pulling the trigger.

Responding to the Harrises' allegations, Remington presented two arguments:

1. The Harrises' expert testimony was inadmissible because it conflicted with undisputed evidence.

2. The Harrises needed expert testimony to avoid summary judgment on the issue of causation.

To counter the first argument, the Harrises disclosed that their expert witness had changed his explanation. But by the time of this disclosure, discovery had already closed. So the district court excluded the expert testimony and granted summary judgment to Remington.

On appeal, the Harrises challenge the exclusion of the expert testimony and the award of summary judgment. We reject both challenges. The district court did not abuse its discretion in excluding the expert testimony, and the Harrises didn't argue in district court that they could survive summary judgment even without expert testimony. So we affirm the award of summary judgment to Remington.

2

**1.    The Harrises allege that a defect in the rifle caused an injury to Ms. Harris.**

Roughly two years after buying the rifle, Ms. Harris took it to hunt. As she climbed to a tree stand, the rifle got tangled in mesh. Ms. Harris testified that when she had tried to free the rifle from the mesh, the safety moved to the "off" position and the rifle fired into her hand without anyone pulling the trigger. The injury was severe enough to require amputation of two of Ms. Harris's fingers.

**2.    The Harrises' expert witness explains that the rifle fired because a bond had formed between the safety and trigger mechanisms.**

Ordinarily, a rifle has two separate safeguards preventing an unintentional shot. The first is the safety mechanism. When the safety is on, the rifle can't fire. The second is the trigger mechanism. Remington puts space between the mechanisms for the safety and trigger so that a user must pull the trigger to fire the rifle.



The space between the safety and the trigger mechanisms

But what happens if a strong bond connects the safety and trigger mechanisms? The Harrises argue that a liquid bonding agent solidified, eliminating the trigger as a separate safeguard.



The Harrises' photographic evidence of a bond between the safety and trigger mechanisms

Without that safeguard, the Harrises allege that the rifle would fire whenever someone turned the safety off even if no one pulled the trigger.

To support their allegation, the Harrises submitted affidavits by an expert witness, Mr. Charles Powell. In his affidavits, Mr. Powell provided two explanations for the formation of the bond.

Mr. Powell first opined that the bond had formed after the Harrises engaged the safety and stored the rifle in a cold room, causing a liquid bonding agent to solidify. In Mr. Powell's view, the bond did not break until the safety got tangled in the mesh of the tree stand, causing the rifle to fire without anyone pulling the trigger.

4

Remington argued that if a bond had formed from the cold, the rifle would have improperly fired when Mr. Harris turned the safety off at least a year earlier in order to clean the rifle. Remington based this argument on two aspects of Mr. Powell's opinion testimony:

1. Mr. Powell didn't suggest that the rifle had misfired before Ms. Harris went to hunt.

2. Mr. Powell opined that once the bond broke, the liquid bonding agent wouldn't solidify again.

Given these aspects of Mr. Powell's opinion testimony, Remington contended that storage in a cold room couldn't explain why the rifle hadn't misfired until it got tangled in the mesh.

Confronted with Remington's argument, Mr. Powell changed his explanation, opining for the first time that the bond had formed when a lubricant (called "Molykote") moved between the safety and trigger mechanisms and caused the liquid bonding agent to solidify.

**3. The district court excludes Mr. Powell's expert testimony and awards summary judgment to Remington.**

Remington moved to exclude all of Mr. Powell's expert testimony, and the district court granted the motion. The court reasoned that

- the Harrises had waited too long to disclose Mr. Powell's opinion about the movement of Molykote and

- Mr. Powell's other opinions didn't fit the relevant facts.

Besides moving to exclude the expert testimony, Remington moved for summary judgment on the product liability claim, arguing that the

Harrises needed expert testimony to avoid summary judgment on the issue of causation. The Harrises did not dispute the necessity of expert testimony, and the absence of a dispute led the district court to grant Remington's motion for summary judgment.

**4.     We uphold the district court's decision to exclude Mr. Powell's expert testimony.**

We conclude that the district court didn't abuse its discretion in excluding Mr. Powell's expert testimony. The district court reasonably concluded that the Harrises had waited too long to disclose Mr. Powell's testimony about the movement of Molykote. And the Harrises haven't explained what was wrong with the district court's exclusion of Mr. Powell's other opinions.

**A.     We apply the abuse-of-discretion standard.**

In considering the district court's exclusion of expert testimony, we apply the abuse-of-discretion standard. *F & H Coatings, LLC v. Acosta*, 900 F.3d 1214, 1223 (10th Cir. 2018). In applying this standard, we consider whether the district court "present[ed] an explanation for its choice sufficient to enable a reviewing court to determine that it did not act thoughtlessly, but instead considered the factors relevant to its decision and in fact exercised its discretion." *HCG Platinum, LLC v. Preferred Prod. Placement Corp.*, 873 F.3d 1191, 1203 (10th Cir. 2017) (quoting *Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1310 (10th Cir. 2007)). A

6

court abuses its discretion when the ruling is "arbitrary, capricious, whimsical, or manifestly unreasonable." *Coletti v. Cudd Pressure Control*, 165 F.3d 767, 777 (10th Cir. 1999) (quoting *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir. 1994)).

**B.      The district court acted within its discretion in excluding Mr. Powell's opinion testimony about the movement of Molykote.**

Expert reports must disclose "all opinions the witness will express and the basis and reasons for them." Fed. R. Civ. P. 26(a)(2)(B)(i). "A party must make these disclosures at the times and in the sequence that the court orders." Fed. R. Civ. P. 26(a)(2)(D). If a party fails to timely make these disclosures, the party's expert witness cannot testify about the new opinions unless the delay "was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

The Harrises did not timely disclose Mr. Powell's opinion testimony about the movement of Molykote. This opinion did not appear in Mr. Powell's expert report or deposition testimony, and the Harrises did not disclose this opinion until more than two months after the deadline for expert reports.[1]

---

[1]      The Harrises deny that Mr. Powell's Molykote opinion was a new or separate expert opinion; the Harrises instead characterize Mr. Powell's Molykote opinion as mere rebuttal of Remington's argument. Even with this characterization, the district court would have had discretion to exclude Mr. Powell's rebuttal testimony. *See Tanberg v. Sholtis*, 401 F.3d 1151, 1166 (10th Cir. 2005) ("[T]he decision to admit or exclude rebuttal

7

The Harrises argue that their delay was harmless. In deciding whether the delay was harmless, we consider four factors:

1.    the prejudice or surprise to Remington if Mr. Powell could present his new opinion testimony about the movement of the Molykote,

2.    the opportunity for Remington to cure the prejudice,

3.    the potential for the new opinion testimony to disrupt the trial, and

4.    the Harrises' bad faith or willfulness.

*See Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 953 (10th Cir. 2002) (listing the factors).

On the first factor, the Harrises argue that the late disclosure did not prejudice Remington because it had known from the outset that Molykote existed in the trigger mechanism, could move, and could cause the liquid bonding agent to solidify into a bond. But Remington's knowledge didn't eliminate the prejudice.

Though Remington knew that it had used Molykote, Remington's expert witness disagreed with Mr. Powell about the possibility of movement months or years after the rifle had been manufactured. Remington's expert witness testified that Molykote could lead to rapid solidification. But Remington's expert witness did not suggest that the

---

testimony remains within the trial court's sound discretion."). Our decision would thus be the same even if the Molykote opinion had constituted rebuttal.

8

Molykote could move months or years after completion of the manufacturing process. So Remington had no reason to anticipate Mr. Powell's eventual focus on the movement of Molykote to explain the accident.

The district court could reasonably rely not only on the first factor but also the second factor. On the second factor, the Harrises argue that the district court could have avoided prejudice to Remington by providing extra time for discovery, allowing a new deposition of Mr. Powell, requiring him to submit a supplemental expert report, or continuing the trial. But the Harrises forfeited this argument by not raising it in district court. *See United States v. Rayco, Inc.*, 616 F.2d 462, 464 (10th Cir. 1980) (concluding that the defendant failed to preserve an argument by forgoing an opportunity to ask the district court to amend the pretrial order to permit an additional exhibit).

Even without a forfeiture, the Harrises' argument would have failed. The district court explained that:

- the introduction of Mr. Powell's new Molykote opinion would have delayed the trial,

- the case had lingered longer than most of the cases on the court's docket, and

- the Harrises could have learned earlier about the effect of the Molykote.

9

In response, the Harrises contend that Remington didn't disclose that Molykote could cause the liquid bonding agent to solidify. But early in the case, Remington had produced records showing use of both Molykote and a liquid bonding agent in the manufacturing process. Based on these records, Mr. Powell could have tested the effect of Molykote, but he didn't do so until after Remington's expert witness had testified. The district court could reasonably fault Mr. Powell for waiting too long to test the effect of the Molykote.

The Harrises also contend that Remington had "unclean hands" by misrepresenting its testing, which caused Mr. Powell to lose precious time. According to the Harrises, Remington engineers had tested the effect of Molykote but had sometimes incorrectly referred to Molykote as graphite; the Harrises argued that this incorrect reference excused their delay in offering Mr. Powell's testimony about the Molykote. But the Harrises forfeited this argument by not presenting it in district court. *See* p. 9, above.

### C. The Harrises have not explained how the district court erred in excluding Mr. Powell's opinion testimony based on a misfit with the undisputed evidence.

Mr. Powell originally attributed the accident to solidification of a liquid bonding agent when the rifle was stored in a cold room. Remington

sought exclusion of this opinion, urging a misfit with the undisputed evidence that the rifle hadn't misfired when Mr. Harris adjusted the safety.

The Harrises responded only with Mr. Powell's new opinion testimony as to the movement of Molykote. But the district court concluded that the Harrises could not rely on this testimony because of their delay in disclosure. Without the new opinion testimony, the district court found a misfit between Mr. Powell's original explanation and Mr. Harris's adjustment of the safety years before the accident.

On appeal, the Harrises argue that Mr. Powell used an accepted methodology, observing the rifle, examining the deposits of the liquid bonding agent, and explaining how these deposits had caused the rifle to fire. Given the use of an accepted methodology, the Harrises argue that the district court should have allowed Mr. Powell to testify.

But the district court didn't reject Mr. Powell's methodology. The court instead concluded that Mr. Powell's opinion testimony didn't fit the undisputed evidence, a conclusion that even Mr. Powell conceded. When confronted with the undisputed evidence that the rifle hadn't misfired when Mr. Harris adjusted the safety, Mr. Powell conceded that his explanation depended on the movement of Molykote:

> Q.    So you were offering an opinion on November 5, 2018, to what caused this [liquid bonding agent] to cure; correct?

11

A. Correct. Until I understood the implication of the Molykote powder, that was the only condition I knew that would accelerate curing of the [liquid bonding agent].

Q. So you were offering an opinion in your expert report that you now believe to be wrong; correct?

A. Partially right but partially wrong, correct.

Q. Well, so much so in your affidavit, that you just filed on January 3rd, you attribute it to migrating Molykote as being the cause of the cure; correct?

A. Correct, because my samples would not cure without the Molykote.

Appellants' App'x vol. 5, at 1189–90.

So the district court reasonably concluded that a misfit existed between Mr. Powell's original explanation and the evidence. On appeal, the Harrises don't explain what was wrong with the district court's reliance on a misfit with the evidence. *See Nixon v. City & Cty. of Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (stating that the appellant must "explain what was wrong with the reasoning that the district court relied on in reaching its decision").

In the course of contesting summary judgment, the Harrises argue that Mr. Powell's observation of deposits in the rifle mechanisms could have supported his opinion as to a defect. But the Harrises don't apply this argument to the district court's reason for excluding Mr. Powell's opinion testimony.

12

In excluding the opinion testimony, the court didn't question Mr. Powell's observation of deposits. The court instead relied on a misfit between Mr. Powell's explanation and the undisputed evidence that the bond hadn't broken years earlier when Mr. Harris adjusted the safety. By failing to tie their theory of admissibility to the stated misfit with the evidence, the Harrises failed to develop a meaningful challenge to the district court's reasoning. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 679 (10th Cir. 1998) ("Arguments inadequately briefed in the opening brief are waived . . . .").

With no explanation for why the district court erred in finding a misfit with the undisputed evidence, we lack any basis to disturb the district court's exclusion of Mr. Powell's opinion testimony.

## 5. We also uphold the district court's grant of summary judgment to Remington.

Given the exclusion of this opinion testimony, the district court properly granted summary judgment to Remington. In district court, Remington had argued that the Harrises needed expert testimony to avoid summary judgment, and the Harrises did not argue to the contrary. With no contrary argument, the district court did not err in concluding that the Harrises needed expert testimony to avoid summary judgment.

In challenging the grant of summary judgment, the Harrises argue that:

13

- they didn't need to show why the rifle misfired, just that it did, and

- state law permits proof of a product liability claim without expert testimony when the defect would be obvious to a layperson.

But the Harrises forfeited both these arguments.

The Harrises forfeited the first argument because they hadn't argued in district court that they could avoid summary judgment without explaining why the rifle had misfired. *See* pp. 9–10, above.

The Harrises also forfeited the second argument. *See id.* at 9–10, 14. In seeking summary judgment, Remington asserted that the claim required expert testimony; and the Harrises did not dispute that assertion. At the hearing on the admissibility of expert testimony, Remington made the same argument; and the Harrises again provided no response. So the district court granted summary judgment, relying on the Harrises' failure to argue that their claims could survive in the absence of expert testimony.

In challenging the award of summary judgment, the Harrises don't suggest that they had ever questioned the need for expert testimony. In the absence of any such argument, the district court's exclusion of expert testimony left the Harrises without a basis to avoid summary judgment. As a result, the district court properly granted summary judgment to Remington.

14

**6.     Conclusion**

We affirm. The district court acted within its discretion in excluding Mr. Powell's opinion testimony, and the Harrises didn't argue in district court that they could avoid summary judgment without expert testimony. The absence of expert testimony thus required the district court to grant summary judgment to Remington.