**Russann H. HALL, Plaintiff–Appellee,**

v.

**UNUM LIFE INSURANCE COMPANY OF AMERICA, Defendant–Appellant.**

No. 01–1237.

United States Court of Appeals, Tenth Circuit.

Aug. 20, 2002.

Marcy G. Glenn (Jack M. Englert, Jr., Megan C. Bertron, and Michael S. Beaver with her on the briefs) of Holland & Hart, L.L.P., Denver, CO, for Defendant–Appellant.

Bradley A. Levin of Roberts, Levin & Patterson, P.C., Denver, CO, for Plaintiff–Appellee.

Before LUCERO, HOLLOWAY, and MURPHY, Circuit Judges.

LUCERO, Circuit Judge.

UNUM Life Insurance Company of America ("UNUM") appeals the district court's judgment for plaintiff Russann H. Hall. Hall filed suit against UNUM under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1001–1461, because it terminated her disability benefits. UNUM's principal argument is that the district court improperly considered evidence outside of the administrative record relied upon by UNUM when it terminated Hall's benefits. We have jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

## I

In 1993, Hall injured her left shoulder in a bicycle accident. At the time, she was a Regional Vice President of Sales for Nova Information Systems, Incorporated ("Nova"), and she was a participant in Nova's group long-term disability insurance plan. Under that plan, she was entitled to benefits from UNUM if she was disabled and unable to perform "the material duties of [her] regular occupation." (1 Appellant's App. at 60.) Hall's injury required multiple surgeries in 1993 and 1994, and she was unable to permanently return to her job at Nova. In January 1994, UNUM concluded that Hall was disabled and approved the payment of long-term disability benefits to her. In the summer of 1995, a UNUM employee reviewed Hall's claim file and began to investigate whether Hall remained disabled within the terms of the UNUM policy. UNUM offered Hall a lump-sum payment to resolve all claims under the policy, an offer that Hall refused. The company then proceeded to reevaluate Hall's medical condition and whether that condition prevented her from pursuing her occupation; the reevaluation included surreptitious video surveillance of Hall. Based on this reevaluation, UNUM concluded that Hall was no longer disabled because the restrictions on her physical activities did not prevent her from undertaking work as a vice-president of sales. On April 24, 1996, UNUM terminated disability payments to Hall, and her subsequent internal appeal was denied in November 1996.

After the termination of disability payments, Hall worked for a short time for another corporation as a sales manager but was terminated from that job in 1998. Throughout 1997, Hall received additional

medical treatment due to continuing pain in her left shoulder. A physician diagnosed her condition as "thoracic outlet syndrome," a condition in which the nerves to the arm are constricted. In 1998, Hall underwent two additional surgeries in an attempt to treat the thoracic outlet syndrome. Hall informed UNUM of the additional medical treatment in June 1997 when she sought to have the termination of disability payments reconsidered, but UNUM was never subsequently informed of the additional surgeries.

Hall filed suit against UNUM in August 1997, alleging that UNUM had violated ERISA by improperly terminating her disability payments. UNUM moved for judgment on the administrative record in September 1998, arguing in part that the court was limited to considering the materials compiled by UNUM in the course of its management and termination of Hall's disability claims. The district court characterized this as a motion for summary judgment and denied it on August 24, 1999, ruling that it would consider evidence beyond the administrative record. A bench trial was held August 28–30, 2000. The district court entered findings, conclusions, and an order in December 2000, determining that UNUM had breached its duty to Hall under ERISA. The court held that UNUM owed Hall past-due benefit payments and that Hall was entitled to mandatory injunctive relief for future benefits "so long as her disability continues."[1] (1 Appellant's App. at 74.) In supplemental findings, conclusions, and an order for judgment, the district court ordered that

UNUM pay pre-judgment interest and attorney's fees to Hall.

UNUM timely appeals, arguing that the district court erred in allowing admission of evidence outside the administrative record and awarding Hall attorney fees. Our review is limited to those issues, and thus, we are not asked to address the district court's disability decision on the merits.

## II

■ ERISA provides a detailed and comprehensive set of federal regulations governing the provision of benefits to employees by employers, including disability benefits. ERISA specifically gives a plan beneficiary the right to federal court review of benefit denials and terminations. *See* 29 U.S.C. § 1132(a). However, the statute does "not establish the standard of review for such decisions." *Chambers v. Family Health Plan Corp.*, 100 F.3d 818, 824–25 (10th Cir.1996).

In *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), the Supreme Court established the basic framework for determining the standard of review in ERISA cases that challenge the denial or termination of benefits.[2] The Court held that "a denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone*, 489 U.S. at 115, 109 S.Ct. 948. If discretionary authority ex-

---

1. Hall had also raised a state law claim for relief based on bad faith breach of an insurance contract. The district court found for UNUM on this claim, and Hall does not appeal that decision.

2. The holding in *Firestone* was limited to cases filed under 29 U.S.C. § 1132(a)(1)(B).

*Firestone*, 489 U.S. at 108, 109 S.Ct. 948. Although Hall filed suit under both § 1132(a)(1)(B) and § 1132(a)(3), neither party argues that the holding or rationale of *Firestone* should not apply to Hall's § 1132(a)(3) claim.

ists, then the proper standard of review is abuse of discretion. *Id.* UNUM does not challenge the district court's determination that the de novo standard applies to judicial review of its decision.

However, *Firestone* left open the issue of what evidence may be considered by a federal court in an action under § 1132(a)(1)(B) when de novo review is required. This Circuit, along with the majority of other federal courts of appeals, has held that in reviewing a plan administrator's decision for abuse of discretion, the federal courts are limited to the "administrative record"—the materials compiled by the administrator in the course of making his decision. *Sandoval v. Aetna Life & Cas. Ins. Co.,* 967 F.2d 377, 380–81 (10th Cir.1992); *Woolsey v. Marion Labs., Inc.,* 934 F.2d 1452, 1460 (10th Cir.1991); *see also Miller v. United Welfare Fund,* 72 F.3d 1066, 1071 (2d Cir.1995) (compiling cases and stating that "[m]ost circuits have declared that, in reviewing decisions of plan fiduciaries under the arbitrary and capricious standard, district courts may consider only the evidence that the fiduciaries themselves considered").

However, this Circuit has never considered the proper evidentiary scope of review in de novo ERISA cases, and the courts of appeals are split on this issue. One circuit prohibits the introduction of evidence outside the administrative record in de novo cases. *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966–67 (6th Cir.1990). The Sixth Circuit's reasoning in *Perry* was that

> [n]othing in the legislative history [of ERISA] suggests that Congress intended that federal district courts would function as substitute plan administrators, a role they would inevitably assume if they received and considered evidence not presented to administrators concerning an employee's entitlement to benefits. Such a procedure would frustrate

the goal of prompt resolution of claims by the fiduciary under the ERISA scheme.

*Id.* at 966. The court added that de novo review, in and of itself, did not imply that the reviewing court necessarily had to take additional evidence. *Id. But see VanderKlok v. Provident Life & Accident Ins. Co.,* 956 F.2d 610, 617 (6th Cir.1992) (allowing the admission of additional evidence in a de novo case because the plan administrator failed to follow proper procedures in terminating benefits).

The opposite position has been taken by the Eleventh Circuit, which has held that when conducting a de novo review, any party may be free to submit additional evidence outside the administrative record. *Moon v. Am. Home Assurance Co.,* 888 F.2d 86, 89 (11th Cir.1989). The *Moon* court reasoned that, prior to ERISA, parties would have been able to submit additional evidence. *Id.* As a result, restricting parties to the administrative record would "afford less protection to employees and their beneficiaries than they enjoyed before ERISA was enacted," a conclusion that, according to the *Moon* court, would run counter to the Supreme Court's holding in *Firestone,* which was based in part on preserving pre-ERISA levels of protection for employees. *Id.* (quoting *Firestone,* 489 U.S. at 113–14, 109 S.Ct. 948).

Most circuits have adopted rules somewhere in between these extremes, allowing the admission of additional evidence in de novo cases in limited circumstances. *See, e.g., DeFelice v. Am. Int'l Life Assurance Co. of N.Y.,* 112 F.3d 61, 65–67 (2d Cir. 1997) (allowing the use of extra evidence if the plan administrator has a conflict of interest); *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan,* 46 F.3d 938, 943–44 (9th Cir.1995) (allowing the use of extra evidence where the plan administrator incorrectly interpreted the

plan); *Casey v. Uddeholm Corp.*, 32 F.3d 1094, 1098–99 (7th Cir.1994) (allowing a district court to consider additional evidence where the plan administrator has made no factfinding himself); *S. Farm Bureau Life Ins. Co. v. Moore*, 993 F.2d 98, 101–02 (5th Cir.1993) (allowing the admission of extra evidence with regards to plan interpretation by the administrator, but not with regards to the finding of historical facts by the administrator); *Donatelli v. Home Ins. Co.*, 992 F.2d 763, 765 (8th Cir.1993) (leaving the question of whether to admit extra evidence to the discretion of the district court where there is "good cause" to admit additional information in order to provide "adequate" review); *Quesinberry v. Life Ins. Co. of N. Am.*, 987 F.2d 1017, 1021–27 (4th Cir.1993) (en banc) (leaving the question of whether to admit extra evidence to the discretion of the district court when it finds that exceptional circumstances have been met and listing some of those circumstances); *Luby v. Teamsters Health, Welfare & Pension Trust Funds*, 944 F.2d 1176, 1184–85 (3d Cir.1991) (stating that the decision to admit additional evidence is within the district court's discretion and was permissible in this case because there was no evidentiary record).

█ The most thorough explication of the intermediate position has been provided by the Fourth Circuit in *Quesinberry*. That case first notes the multiple purposes of ERISA: to promote "the interests of employees and their beneficiaries," to provide employees and beneficiaries with at least as much protection as they had enjoyed prior to the enactment of ERISA, to provide "prompt resolution of claims," and to ensure that "district courts [are] not . . . made into substitute plan administrators." 987 F.2d at 1025 (citations omitted). In the Fourth Circuit's view, "the most desir-

able approach to the proper scope of *de novo* review under ERISA is one which balances these multiple purposes of ERISA." *Id.* Allowing a district court to exercise its discretion to admit additional evidence in certain circumstances best reconciles these competing purposes. *Id.*

We agree with the Fourth Circuit that the best way to implement ERISA's purposes in this context is ordinarily to restrict de novo review to the administrative record, but to allow the district court to supplement that record "when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision." *Id.* Unless we allow employees the possibility of supplementing the record in such circumstances, we run the risk of providing employees fewer procedural rights than they had prior to the enactment of ERISA. *Id.; see also Moon*, 888 F.2d at 89. Supplementation will also help protect employees' substantive rights in those limited circumstances where extra-record evidence is relevant and necessary.[3] While allowing supplementation in limited circumstances will slightly increase the cost of judicial review and therefore of managing and administering benefit plans, *Firestone* discounted these concerns in establishing the de novo review standard. 489 U.S. at 115, 109 S.Ct. 948. By strictly limiting the circumstances in which supplementary evidence may be presented, the risk of increasing decision costs—and of deterring employers from providing pension and benefit plans to their employees—is controlled.

Finally, allowing the possibility of supplementing the record is appropriate given the "variety of ERISA cases which are brought to the federal courts." *Quesinberry*, 987 F.2d at 1025. Some of these

---

3. As pointed out in oral argument by counsel for UNUM, supplementation may also be warranted in order to protect the plan administrator.

cases reach the courts with substantial administrative records because of the plan administrator's detailed procedures and record-keeping for benefit determination decisions. Other cases arrive with very limited records. *Id.* ERISA cases also may involve plans in which the payor and administrator are one and the same, or different entities, and they may involve complex issues of medicine, law, and plan interpretation. *Id.* Given this diversity, providing the district courts with flexibility to admit additional evidence in limited circumstances is appropriate and even necessary in order to address the varied situations in which the administrative record alone may be insufficient to provide proper de novo review.

We emphasize that it is the unusual case in which the district court should allow supplementation of the record. *See id.* ("In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator or trustee at the time of the determination."). The party seeking to supplement the record bears the burden of establishing why the district court should exercise its discretion to admit particular evidence by showing how that evidence is necessary to the district court's de novo review.

To provide guidance to district courts on this issue we note that the following exceptional circumstances could warrant the admission of additional evidence:

> claims that require consideration of complex medical questions or issues regarding the credibility of medical experts; the availability of very limited administrative review procedures with little or no evidentiary record; the necessity of evidence regarding interpretation of the terms of the plan rather than specific historical facts; instances where the payor and the administrator are the

same entity and the court is concerned about impartiality; claims which would have been insurance contract claims prior to ERISA; and circumstances in which there is additional evidence that the claimant could not have presented in the administrative process.

*Id.* at 1027. However, district courts are not required to admit additional evidence when these circumstances exist because a court "may well conclude that the case can be properly resolved on the administrative record without the need to put the parties to additional delay and expense." *Id.* This list is not exhaustive; it is "merely a guide for district courts faced with motions to introduce evidence not presented to the plan administrator." *Id.* In considering any such motion, the district court will also need to "address why the evidence proffered was not submitted to the plan administrator," *id.*, and should only admit the additional evidence if the party seeking to introduce it can demonstrate that it could not have been submitted to the plan administrator at the time the challenged decision was made. *See, e.g., Davidson v. Prudential Ins. Co. of Am.,* 953 F.2d 1093, 1095 (8th Cir.1992) (holding that the district court did not err in refusing to admit extra-record evidence because the additional evidence "was known or should have been known to [plaintiff] during the administrative proceedings"). Conversely, "[i]f the administrative proceedings do not allow for or permit the introduction of the evidence, then its admission may be warranted." *Quesinberry,* 987 F.2d at 1027. Cumulative or repetitive evidence, or evidence that "is simply better evidence than the claimant mustered for the claim review" should not be admitted. *Id.*

**IV**

With these principles in mind, we turn to consider whether the district court ap-

propriately admitted the additional evidence.

During trial, the district court allowed the admission of enormous amounts of testimony and evidentiary materials outside of the administrative record, including depositions, Hall's medical records, and the testimony of several witnesses. During the hearing on whether to admit additional evidence, the district court made the following observations:

Then, there's an additional issue. If it's de novo, what's the scope of the evidentiary record to be relied on by the Court? And, I'll tell you my preliminary view of it to assist you in focusing whatever additional argument you wish to make here. It seems to me that the real dispute in the case is what is the plaintiff's condition or what it was at the time of the termination of disability benefits. And that, it seems to me, is a factual question and it's one where medical opinions can differ.

In fact, this is not in the papers, but certainly I've had litigation here before about thoracic outlet syndrome. It, in itself, is a controversial diagnosis. As I say, I'm going a bit beyond what you've submitted here, but I know it to be true that doctors disagree, orthopedic surgeons disagree, and particularly with respect to whether there's a surgical approach that can assist such a condition.

But, in my study of the cases, and I realize there's some difference among the Circuits, but particularly looking at the language of the Supreme Court in *Firestone*, I think that this is two things. First, this is just like—just because it's ERISA doesn't make this all that much different from the recovery on an insurance policy and that is whether the defendant insuring company is in accord with the promises of its coverage and that really depends on a factual determination of the plaintiff's condition as of the time of termination and now because plaintiff is also seeking here equitable relief by way of what amounts to a declaratory judgment that she's entitled to not only past benefits unpaid, but continuing benefits. And that, you know, what we should do is set the case down for trial and see what the witnesses have to say about her. And, the [court is] in its usual fact-finding role to determine whether there's compliance with the policy. *I don't see that this is a discretionary call and I don't see that the case should be limited to the record that the insurance company compiled.*

(6 Appellant's App. at 1609–10 (emphasis added).) Later in the same hearing, the court added, "I'm not looking at the record. That's my point. This isn't a review of a Social Security disability determination. I don't care what's in [UNUM's] record. What I'm looking at is does the plaintiff have evidence to come into this room and prove disability?" (6 *id.* at 1637.) The court concluded at the end of the hearing

that the motion for judgment on the administrative record is inappropriate. That in my view of the law under ERISA, the plaintiff is claiming benefits under a plan, a policy that is an ERISA plan, and that the Court has jurisdiction to determine whether the plaintiff meets the coverage of the plan and did at the time of the termination of benefits and continues to do so and is not limited to any administrative record. In the language of the cases that we've had, this is not some kind of [deferential] review of a determination made by the insurance company, and accordingly, *the plaintiff is entitled to bring into this Court in a trial to the Court evidence that she meets the conditions of the coverage.*

(6 *id.* at 1639 (emphasis added).)

The discussion by the district court at the hearing indicates that it felt it had

no discretion and was required by law to allow Hall to admit evidence outside of the administrative record. That conclusion was error; the district court could only admit extra-record evidence once it had exercised its discretion and determined that the evidence was necessary for its de novo review.

Hall insists, however, that a review of the record shows that the district court's admission of additional evidence was appropriate under the factors identified in *Quesinberry.* In particular, Hall argues that admission of extra-record evidence was appropriate because (1) "Hall's claims required [the district court] to consider medical testimony regarding her 'unique' medical course;" (2) "the payor and the administrator are the same entity, *i.e.,* UNUM, raising concerns about the company's impartiality," (3) "Hall's claims would have been insurance contract claims prior to ERISA," and (4) "there was certain evidence that Hall could not have presented in the administrative process." (Appellee's Br. at 44.)

■ Regarding the first argument, the district court's statements quoted above imply that additional evidence might have been helpful in determining whether Hall suffered from thoracic outlet syndrome and therefore was disabled for purposes of the policy. (*See* 6 Appellant's App. at 1609 (stating that thoracic outlet syndrome is a "controversial diagnosis" about which "doctors disagree").) But on the other hand, the district court concluded that the surgeries—the most important additional evidence that was relevant to thoracic outlet syndrome—were important only in showing that "the pain she experienced was real and unrelenting." (1 *id.* at 72). The district court did not rely on that evidence to resolve the "complex medical question[ ]" of whether Hall truly suffered from thoracic outlet syndrome. *Quesinberry,* 987 F.2d at 1027.

■ Hall's second argument is that because the payor and administrator of this benefit plan are the same entity, additional evidence should be permitted. It is true that, in the context of arbitrary and capricious review under ERISA, we have held that where a party is both the administrator and payor or insurer of a disability plan "an inherent conflict exists" such that our review is less deferential. *Caldwell v. Life Ins. Co. of N. Am.,* 287 F.3d 1276, 1283 (10th Cir.2002).

But that does not mean, in the context of deciding whether to admit additional evidence for de novo review cases, we should automatically allow the admission of additional evidence by the district court simply because the administrator and payor are the same party. The administrator and the payor are often the same party for many ERISA benefit plans. If we were to adopt a blanket rule that the admission of additional evidence should be allowed whenever the same party is the administrator and payor, then it will not be the unusual case in which additional evidence is admitted. It would be commonplace. Moreover, in the context of arbitrary and capricious review, we only reduce our deference to the administrator's decision to the extent that an actual conflict is shown—a "sliding scale" approach—which allows us to calibrate the reduced deference to the level of actual conflict that exists. *Id.* at 1282–83. Similarly, in the context of admitting additional evidence based on a possible conflict of interest, evidence should only be admitted to the extent that the party seeking its admission can show that it is relevant to the conflict of interest and that the conflict of interest in fact requires the admission of the evidence. That way the district court can calibrate the admission of additional evidence to the amount of conflict of interest that actually existed and to the manner in

which that conflict tainted the decision-making process of the administrator.

Here, there has been no showing by either party, and there has been no finding by the district court, of the manner in or extent to which the conflict of interest affected UNUM's decisionmaking process. Nor has there been any showing or finding of how the additional evidence would be relevant to the conflict or would address any shortcomings in the record or decisionmaking process caused by the conflict. Without such analysis, the district court could not have admitted the additional evidence. *See Quesinberry*, 987 F.2d at 1027 (stating that additional evidence may be admitted "where the payor and the administrator are the same entity *and the court is concerned about impartiality*" (emphasis added)).

■ With respect to Hall's third argument—that her lawsuit would have been an insurance contract claim prior to the enactment of ERISA, and as a result additional evidence should be admitted—the most the record reveals is a statement by the district court that "just because it's ERISA doesn't make this all that much different from the recovery on an insurance policy" and that Hall should therefore be allowed to present additional evidence. (6 Appellant's App. at 1610.) The universe of ERISA suits that might have been insurance claims prior to the enactment of ERISA could include all cases involving group insurance contracts by employers to provide health, disability, or other benefits to employees. Such contracts are a standard method by which employers provide these benefits. Thus, allowing the introduction of additional evidence in all of these types of cases would mean that the introduction of additional evidence would again no longer be limited to the unusual case, undermining the goal of not making district courts "substitute plan administrators." *Quesinberry*, 987 F.2d at 1025.

Even in cases where the plaintiff's suit would have been an insurance claim prior to ERISA, the district court must still make a particularized determination of whether and why specific evidence outside the administrative record should be admitted.

■ As for Hall's fourth argument—that there was evidence that she could not have presented in the administrative proceedings—it is true that she could not have presented the evidence of the additional surgeries to UNUM because they occurred after she filed suit. This evidence therefore falls squarely within one of the grounds for admission under *Quesinberry, id.* at 1027, and Hall has also therefore satisfied her burden of showing that she would have been unable to present the evidence to the plan administrator at the time of the final decision.

In its findings, the court noted that the key issue was whether "plaintiff was disabled from working at her regular occupation of regional vice president for sales when UNUM discontinued payment of policy benefits and that her disability continued through the time of trial and can reasonably be expected to continue for the indefinite future." (1 Appellant's App. at 72.) The court then stated that the "limiting factor" that determined whether plaintiff was disabled was plaintiff's pain. (1 *id.; see also* 1 *id.* at 73 (stating that "proof" regarding "enduring pain" was "dispositive" in the case).) As to that factor, the court noted that "[w]hat is most persuasive to the court is [Hall's] willingness to subject herself to the two surgeries by Dr. Annest in 1998. It is highly unlikely that any person would undergo those procedures unless the pain she experienced was real and unrelenting." (1 *id.* at 72.) As the district court's order makes clear, the surgeries performed by Dr. Annest on Hall in 1998 were central to its final decision in favor of Hall; the court therefore implicit-

ly concluded that the probative value of the surgeries was far greater than the probative value of the evidence of Hall's pain in the administrative record. Thus, the evidence was not cumulative or repetitive of previous evidence Hall had provided, *see United States v. Kizeart*, 102 F.3d 320, 325 (7th Cir.1996) (defining cumulative evidence as evidence that "adds very little to the probative force of the other evidence in the case, so that if it were admitted its contribution to the determination of truth would be outweighed by its contribution to the length of trial" (quotation omitted)), and should not be excluded on those grounds.

We emphasize that the mere fact that additional evidence is developed after litigation has commenced does not necessarily mean that a party should automatically be able to introduce that extra-record evidence. *See Mongeluzo*, 46 F.3d at 944 (stating that "a district court should not take additional evidence merely because someone at a later time comes up with new evidence that was not presented to the plan administrator"); *Davidson*, 953 F.2d at 1095 (refusing to admit extra-record evidence developed after litigation was begun because it was "known or should have been known to [plaintiff] during the administrative proceedings"). However, in the factual context of this case, these surgeries are not the type of evidence that were known or should have been known to plaintiff. Given the obvious importance of plaintiff's surgeries to the question of whether she was disabled, this evidence is the type of additional extra-record evidence that would generally be admissible.

■ Even in situations where a decision is within the discretion of the district court and the district court reaches that decision based on an erroneous conclusion of law, we may nonetheless affirm based on our own review of the record "in the interest of efficiency and judicial economy." *Ohlander v. Larson*, 114 F.3d 1531, 1538 (10th Cir.1997). We may do so as long as there is "no dispute regarding the underlying facts ... and the existing record is adequate to address the issues of concern." *Id.* There is no dispute among the parties as to the facts relevant to the decision to admit this evidence. And, as discussed above, the record is adequate for us to conclude that the surgeries were properly admitted by the district court based on the application of the *Quesinberry* factors.[4]

## V

■ UNUM challenges the district court's award of attorney fees to Hall. We review such an award for an abuse of discretion. *Gordon v. United States Steel Corp.*, 724 F.2d 106, 108 (10th Cir.1983). The district court explicitly considered all of the relevant factors in making its decision, and based on our independent review of the record we conclude that the district court did not abuse its discretion.

## VI

The judgment of the district court is **AFFIRMED** in part and **VACATED** in part.[5]

---

4. Because UNUM has not identified any other extra-record evidence that was improperly admitted and was prejudicial, we need not address whether the admission of the remaining extra-record evidence constituted harmless error.

5. While this appeal was pending, we received a suggestion of plaintiff Hall's death. Hall's death has rendered her claims for declaratory and injunctive relief regarding future disability benefits moot. We therefore vacate the portion of the district court's decision that granted her such relief. However, her claim for disability benefits owed to her after

UNUM's termination of her payments is a claim for monetary damages which survives her death. *See Harrow v. Prudential Ins. Co. of Am.,* 279 F.3d 244, 249 (3d Cir.2002). The parties may address any issues as to substitution of parties and survival of Hall's claim of action before the district court. *See* Fed. R.App. P. 43(a); *see also, e.g., Lawmaster v. Ward,* 125 F.3d 1341, 1353 n. 6 (10th Cir. 1997).