**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 17, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

THERESA F. NILES,

Plaintiff-Appellant,

v.

AMERICAN AIRLINES, INC.;
TRANSWORLD AIRLINES, LLC,
UNIVERSAL WELFARE BENEFIT
PLAN,

Defendants-Appellees.

No. 07-3032
(D.C. No. 04-CV-4060-SAC)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **TACHA**, **EBEL**, and **MURPHY**, Circuit Judges.

Theresa F. Niles appeals the district court's grant of summary judgment in

favor of the defendants on her claim for disability benefits brought pursuant to the

Employee Retirement Income Security Act, 29 U.S.C. §§ 1001 - 1461 (ERISA).

Ms. Niles argues that summary judgment should be reversed because the district

---

[*]     After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is
therefore ordered submitted without oral argument. This order and judgment is
not binding precedent, except under the doctrines of law of the case, res judicata,
and collateral estoppel. It may be cited, however, for its persuasive value
consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

court (1) failed to apply the appropriate de novo standard of review to the defendants' action in denying her disability benefits; (2) improperly relied on a surveillance video and portions of her deposition that were not part of the administrative record; and (3) improperly excluded documents she submitted to supplement the administrative record. We affirm in part, vacate in part, and remand.

## BACKGROUND

Ms. Niles worked as a Mechanics Supervisor and Technical Quality Assurance Auditor for Trans World Airlines (TWA) from 1977 until November 1996. Her work for TWA ended after a motor vehicle accident in which she sustained neck injuries. Effective May 1997, she began receiving long-term disability benefits pursuant to TWA's Group Benefits Plan.

In 2001, defendant American Airlines, Inc. (American) purchased certain TWA assets and created the TWA Airlines LLC Universal Welfare Benefit Plan (Plan). American sponsored and administered the self-insured Plan. As a former employee of TWA, Ms. Niles remained insured and received ongoing disability benefits under the Plan. The Plan provides disability benefits to an insured who becomes "[t]otally [d]isabled from any occupation while covered because of an accident, [s]ickness or pregnancy." Aplee Supp. App. at 70. An employee is considered totally disabled "during any period when, as a result of [i]njury, [s]ickness or pregnancy, the Employee is completely unable to perform the duties

-2-

of his occupation and is not performing any other work or engaging in any other occupation or employment for wage or profit." Aplt. App., Vol. III, at 881.

In March 2002, Metropolitan Life Insurance Company (MetLife) began serving as the Plan's third-party administrator. MetLife decided to conduct a review of Ms. Niles' continuing eligibility for disability benefits. As a part of the review, it required her to undergo a Functional Capacity Evaluation (FCE) to evaluate her physical ability to work.

**The Functional Capacity Evaluation**

MetLife hired a third-party evaluator, Isernhagen Work Systems (Isernhagen) to administer the FCE tests to Ms. Niles. Dan Van Buskirk, an occupational therapist, tested her on behalf of Isernhagen over a two-day period in October 2002. Mr. Van Buskirk concluded that she gave "maximal effort" on all of the test items. *Id.* at 990. He further noted that "[t]hroughout the lifting and carrying portions of the evaluation, [Ms. Niles] requested to momentarily sit down or lean against the shelves secondary to dizziness, nausea, and/or throbbing headache." *Id.* Objective signs coincided with these expressions of subjective discomfort, but she was able to work through the discomfort and tolerated the activities safely despite her pain.

Mr. Van Buskirk's report concluded that Ms. Niles was able to work at the "light" level, as defined by the United States Department of Labor. *Id.* at 991. With certain restrictions, she could also perform "medium" work. *Id.* at 995. She

would, however, only occasionally be able to tolerate trunk flexion, the range of motion in her neck was limited, and "[w]ith increased physical exertion she complains of neck pain, headache, dizziness, and nausea." *Id.*

With the FCE in hand, MetLife conducted a "Transferable Skills Analysis" in which it identified 95 occupations in the "sedentary" or "light" categories that were "good" or "closest" to Ms. Niles' skills and experience and that paid at least $11.63 per hour. *Id.* at 996. It then selected eighteen of these positions from the list and hired a third-party consultant, CorVel Corporation, to conduct a labor market survey. CorVel selected three of these jobs, "Quality Control Technician," "Transportation Maintenance Supervisor," and "Inspector, General," interviewed local employers, and reported to MetLife concerning their availability.

**The Surveillance Report and Video**

MetLife also hired a private investigator to conduct surveillance of Ms. Niles. The investigator prepared a report and submitted a surveillance video to MetLife.

The report indicates that on September 6, 2002, the investigator conducted surveillance at Ms. Niles' residence in Ottawa Kansas and observed a person described as a "50-year-old female, 5'8" tall, approximately 165 lbs., with shoulder length, brown hair" departing and returning to her residence. *Id.* at 978. The next day, the investigator observed this person washing her gray Buick

-4-

LeSabre at a local carwash. The investigator shot about twenty minutes of video that shows "Claimant exiting her vehicle, opening the hood and trunk of the vehicle, crouching down to wash the vehicle's tires, and bending at times to wash under the vehicle." *Id.* at 979. He noted that her movements were "fluid and without hesitation," that she showed "no signs of pain or discomfort," and wore "no visible medical aids or devices." *Id.*

**MetLife's Initial and Second Review Denials**

By letter dated December 31, 2002, MetLife notified Ms. Niles that her benefits had been terminated because she no longer met the definition of total disability under the Plan. According to the letter, MetLife reached this determination based on the surveillance report and video and the results of the FCE.

On January 14, 2003, Ms. Niles requested a second review from MetLife of its disability determination. She contended that MetLife's decision was "flawed, misleading or untrue" for the following reasons: (1) certain personal details about her provided by the investigator were incorrect, and she was not in Ottawa Kansas on September 6-8, 2002, as the investigator indicated; (2) Mr. Van Buskirk was instructed not to complete the evaluation portion of the FCE tests and his information sheet only listed partial information about her disabilities; and (3) MetLife's decision was inconsistent with the Social Security Administration's determination that she was unable to perform competitive employment at any

exertional level and with the recent decision of her life insurance carrier to waive her annual premium based on her ongoing disability. *Id.* at 1013-14.

After considering the information provided by Ms. Niles, MetLife upheld the termination of her benefits. It rejected reliance on determinations made by the Social Security Administration (SSA) and Ms. Niles's life insurance carrier. Without addressing Ms. Niles's specific objections to the FCE and the surveillance, MetLife also noted that its decision was based primarily upon the results of the FCE and the labor market survey, stating that "[t]he surveillance done was a supplemental tool." *Id.* at 1022.

**PBAC Appeal**

On August 21, 2003, Ms. Niles appealed MetLife's denial of benefits to American's Pension and Benefits Committee (PBAC). She submitted a significant amount of additional evidence with her appeal. These additional materials included medical records from her treating physician, Dr. Spratt, including letters in which he opined that she was disabled. In one of the letters, Dr. Spratt criticized the conclusions reached by Dr. VanBuskirk in the FCE and opined that the FCE was internally inconsistent. Ms. Niles also submitted opinions from other treating physicians describing her exertional and non-exertional limitations.

In her appeal letter, Ms. Niles criticized the surveillance report submitted by MetLife's private investigator. She again asserted that on the dates the

surveillance was conducted, she was not in Ottawa, Kansas, but was in Colorado at a mineral spa. She also submitted her own report from a vocational expert, indicating that she was not able to return to her primary job, nor to perform any other job on a competitive basis.

As part of its review, the PBAC referred Ms. Niles's case to an independent medical consultant, Dr. Robert D. Petrie. Dr. Petrie reviewed her medical records and concluded that (1) she had no demonstrated impairments related to the diagnosis of either hypothyroidism or scarcoidosis; (2) there was no evidence that her activities of daily living were restricted due to a psychological impairment; (3) her degenerative disc disease was not established as the source of her subjective complaints of pain, which were inconsistent with the objective findings; (4) her subjective pain complaints were better explained by pending litigation and the possibility of financial gain than by significant physical findings; (5) mentally, she was overly focused on a non-existent fracture of her cervical spine, which was based on an early and incorrect diagnosis and unsupported by radiologic findings; and (6) she had the ability to perform light to moderate work activities and was not totally disabled according to the Plan definition.

The PBAC issued its decision on November 24, 2003. Its decision letter indicated that after conducting an extensive review and analysis of Ms. Niles' case and considering all of the information she had provided with her appeal, the

PBAC had determined that her disability claim had been processed in accordance with the terms of the Plan. The PBAC therefore upheld the decision to deny benefits. In response to Ms. Niles' complaints about the investigative report, the PBAC stated that the report (including, presumably, the surveillance video) had not been a factor in its decision. The PBAC concluded that "there is no medical evidence to justify Ms. Niles' request for reinstatement/continuation of LTD benefits." *Id.* at 1140.

**District Court Review**

Ms. Niles filed a timely ERISA action seeking disability benefits and alleging that defendants breached their fiduciary duty to her. All parties moved for summary judgment. Although the parties disagreed concerning the standard of review to be applied to the defendants' actions, the district court determined that de novo review applied. It struck many of the exhibits that Ms. Niles submitted in support of her summary judgment motion, rejected her fiduciary duty claim and granted summary judgment to the defendants on her claim challenging the denial of disability benefits.

The district court found Ms. Niles' challenges to the surveillance video irrelevant, because the PBAC expressly stated it did not rely on the video in making its decision. Notwithstanding this ruling on Ms. Niles' challenges to the video, the district court admitted the video on de novo review, "for the limited purpose of demonstrating to the court the actions plaintiff admits she was able to

do, rather than showing that the subject actually performing those actions [in the video] was in fact the plaintiff." *Id.*, Vol. II, at 866. It found that "[a] reasonable person viewing the video would conclude that the acts undertaken by the person in the video are facially inconsistent with those that would voluntarily be performed by one totally disabled by chronic pain syndrome, a degenerative neck/disc disease or a limited ability to look down or bend over." *Id.* at 867.

The district court concluded by stating that based on its review of the record, Ms. Niles received a full and fair review and that the process was reasoned and principled. It found no error in the PBAC's denial of disability benefits.

## ANALYSIS

### 1. Standard of Review

"We review de novo the district court's summary judgment decision, applying the same standard as the district court." *Butler v. Compton*, 482 F.3d 1277, 1278 (10th Cir. 2007). Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c) (2007). We examine the record and all reasonable inferences that might be drawn from it in the light most favorable to the non-moving party. *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006). Finally, we may affirm on any basis supported by

the record, even though not relied on by the district court.  *Felix v. Lucent Techs., Inc.*, 387 F.3d 1146, 1163 n.17 (10th Cir. 2004).

### 2.  De Novo Review by District Court

The parties do not dispute the district court's conclusion that the PBAC's decision should be reviewed de novo.  Ms. Niles contends, however, that the district court failed in fact to conduct a de novo review and instead improperly deferred to the administrator's decision.

"When applying a de novo standard in the ERISA context, the role of the court reviewing a denial of benefits is to determine whether the administrator made a correct decision.  The administrator's decision is accorded no deference or presumption of correctness."  *Hoover v. Provident Life and Accident Ins. Co.*, 290 F.3d 801, 808-09 (6th Cir. 2002) (quotation and citation omitted).  *See also Salve Regina Coll. v. Russell*, 499 U.S. 225, 238 (1991) ("When *de novo* review is compelled, no form of appellate deference is acceptable.").  We review de novo the district court's application of the appropriate standard of review to the PBAC's decision.  *DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006).  Ms. Niles raises a number of arguments in support of her claim that the district court did not conduct de novo review.

### a.  "Full and Fair Review"

Under ERISA, an insurer must provide a full and fair review of an initial denial of a claim for benefits.  29 U.S.C. § 1133(2).  Ms. Niles complains that the

district court erred by examining whether the PBAC conducted a full and fair review, rather than conducting its own full and fair review. Her argument misconstrues the district court's decision. The district court's determination that the PBAC provided a full and fair review does not mean that it deferred to the PBAC's decision or that it failed to conduct a de novo review of the merits.

Although a court conducting de novo review owes the administrator no deference, the administrator's decision is still the decision under review. *See Hoover*, 290 F.3d at 808-09. A showing that the administrator failed to follow ERISA procedures therefore provides a basis for reversal separate from that provided by de novo review of the merits of the claim. *See, e.g., Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 777 (7th Cir. 2003) (remanding for retroactive reinstatement of benefits where plan administrator failed to follow full and fair review procedures).

In her summary judgment motion, Ms. Niles sought reversal both on procedural grounds and on the merits. Her full and fair review argument targeted the PBAC's failure to follow the proper procedures in evaluating her claim. *See* Aplt. App., Vol. I, at 158-61.[1] These procedurally-based arguments were presented separately from her argument targeting the *merits* of the PBAC's

---

[1] Specifically, she contended that the administrator failed to permit her to respond to Dr. Petrie's opinion, that it accepted his opinion though it was not based on all the relevant evidence, and that the PBAC's "failure to obtain an [independent medical examination] constituted a procedural irregularity." Aplt. App., Vol. I, at 160.

determination, which she argued was unsupported by substantial evidence. *See id.* at 161-77. We conclude that the district court's finding that PBAC provided a full and fair review, which responded to the procedural arguments Ms. Niles raised, did not deprive her of de novo consideration of the merits of her claim.

### b. Other Alleged Evidence of Improper Deference

Other language in the district court's opinion, however, raises a troubling possibility that while ostensibly conducting de novo review, the district court may have improperly deferred to the PBAC's decision. An instance of this troubling language is found in its analysis of Ms. Niles's merits argument concerning the FCE findings. The district court began its analysis by stating it did "not agree with the plaintiff's contention that the FCE's findings establish plaintiff's inability to perform any work activity on a consistent basis." Aplt. App., Vol. II, at 864. It then listed reasons why it disagreed with Ms. Niles's contention. It concluded, however, by stating that "MetLife reviewed the FCE in its entirety, found it to be valid, and identified occupations within both the light and sedentary demand categories that match plaintiff's job skills. *Reliance on the FCE, and resultingly, the Labor Market Survey, was warranted.*" *Id.* at 864 (emphasis added). This conclusion suggests that the district court may have believed its function was to determine whether MetLife properly relied on the FCE, rather than whether it should rely on the FCE in reaching a de novo decision on disability.

-12-

The district court employed other language suggesting application of an improper standard. It stated that there was evidence that "might support an award of long-term disability benefits," but noted that this evidence was "based almost exclusively on plaintiff's subjective claims" and was rebutted by "*[o]ther substantial evidence*." *Id.* at 869 (emphasis added). It further concluded that plaintiff's admissions concerning her ability to perform the acts requisite to washing her car, the evidence provided by Dr. Petrie's report, and the FCE all provided "*some evidence* that plaintiff was not totally disabled." *Id.* On de novo review, however, the standard is not whether "substantial evidence" or "some evidence" supported the administrator's decision; it is whether the plaintiff's claim for benefits is supported by a preponderance of the evidence based on the district court's independent review. *See, e.g., Alexander v. Winthrop, Stimson, Putnam & Roberts Long Term Disability Coverage*, 497 F. Supp. 2d 429, 433, 440 (E.D.N.Y. 2007) (applying preponderance standard in de novo review case); *see also Ray v. UNUM Life Ins. Co. of Am.*, 224 F. App'x 772, 782 (10th Cir. 2007) (unpublished) (approving district court's application of preponderance standard in de novo review case).

### c. District Court's Review of Record

We are also concerned by whether the district court conducted a de novo review of the medical evidence. The district court stated that it had reviewed the administrative record. Aplt. App., Vol. II, at 869. It is difficult to determine the

extent of this review, however, because it failed to discuss much of the medical evidence Ms. Niles submitted. We are particularly concerned by the fact that the district court appears to have viewed Ms. Niles' evidence primarily through the lens of the independent medical expert, Dr. Petrie. While it devoted considerable discussion to Dr. Petrie's report and conclusions, the district court mentioned the opinions and diagnoses of Ms. Niles's treating physicians in passing at most. "Plan administrators . . . may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician." *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003). The same principle applies to a court reviewing the medical record de novo.

American's position that the district court was not obligated to discuss each and every piece of medical evidence seems unimpeachable. *See* Aplee. Br. at 27 n.4. But that is not the problem. The problem is that the district court's language conveys the impression that it believed its task was only to determine whether Dr. Petrie's report provided substantial evidence for the PBAC's decision. As we have seen, that is not the appropriate standard to be applied as part of a de novo review. The district court should instead have examined all the medical evidence, including Dr. Petrie's report, and determined whether that evidence created a genuine issue of material fact concerning whether Ms. Niles was disabled under the preponderance standard.

### d. Conclusion

For the foregoing reasons, we must vacate that portion of the district court's decision granting summary judgment to the defendants on Ms. Niles's disability benefits claim, and remand for a proper de novo analysis of whether her claim to benefits is supported by a preponderance of the evidence. On remand, the district court should give careful consideration to all the evidence of record in reaching its conclusion, including the FCE and Ms. Niles's objections thereto, and the medical evidence.

### 3. Evidentiary Rulings

Ms. Niles also challenges the district court's rulings on certain evidentiary issues.

### a. Consideration of Surveillance Video and Deposition

The PBAC stated that it had not relied on the surveillance report in reaching its decision. The district court nevertheless considered the surveillance video for the limited purpose of determining the type of activities Ms. Niles admittedly was capable of performing. Ms. Niles made the admission on which the district court relied during the course of her deposition. She contends that the district court should not have considered the video and should not have admitted her deposition into evidence.

### i.  The Video

The video was part of the administrative record presented to the PBAC and therefore part of the record to be considered by the district court on de novo review.  At the time of the PBAC's decision, Ms. Niles denied that she was the person captured on the video.  Her subsequent admission during her deposition that she was capable of performing the activities portrayed on the video came after the administrative record was closed and was not available to the PBAC. The fact that the PBAC discounted the video was therefore not binding on the district court on de novo review, particularly given the limited purpose for which the district court considered it.  *Cf. Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 970-71 (C.D. Cal. 2005) (considering, as part of de novo review, surveillance results favorable to claimant that went ignored and unmentioned by plan administrator in its denial decisions).[2]

### ii.  The Deposition

Ms. Niles argues that her deposition should not have been admitted into evidence because it was outside the administrative record and did not meet the criteria for supplementing the record on de novo review that we outlined in *Hall*

---

[2]      Ms. Niles also argues that the video should not be given much weight because it only shows what she could do for the twenty minutes or so of its duration and therefore is only weakly probative of her ability to work an eight-hour day.  On remand, the district court may of course consider this factor in determining whether either party has established entitlement to summary judgment.

*v. UNUM Life Insurance Co. of America*, 300 F.3d 1197 (10th Cir. 2002).  Under

*Hall*, "[t]he party seeking to supplement the record bears the burden of

establishing why the district court should exercise its discretion to admit

particular evidence."  *Id.* at 1203.  Specifically, the party must show that (1) the

evidence is "necessary to the district court's de novo review"; (2) "it could not

have been submitted to the plan administrator at the time the challenged decision

was made"; (3) the evidence is not "[c]umulative or repetitive" nor (4) may it be

"evidence that is simply better evidence than the claimant mustered for the claim

review."  *Id.*  (quotation omitted).  "District courts must conduct analysis

case-by-case to determine whether the four prongs of the *Hall* test are met."

*Jewell v. Life Ins. Co. of N. Am.*, 508 F.3d 1303, 1309 (10th Cir. 2007), *petition*

*for cert. filed* (U.S. Feb. 19, 2008) (No. 07-1121).  We review the district court's

ultimate decision under *Hall* for an abuse of discretion.  *Id.*

Addressing the first factor in *Hall*, the district court found that the

deposition was necessary to its de novo review because it involved admissions by

Ms. Niles that were important in determining the issue of whether she was

disabled.  Addressing the second factor, it concluded that the deposition could not

have been presented in the administrative process, which concluded long before

her deposition was taken.  Although the district court did not address the last two

factors, Ms. Niles does not argue that the deposition is cumulative or repetitive or

that it is simply better evidence than that previously considered as part of the

-17-

administrative process. We conclude that the district court did not abuse its discretion by admitting the deposition.

Finally, Ms. Niles contends that if her deposition is considered, it should be admitted in its entirety. She complains that the deposition submitted to the district court was incomplete because it did not contain her corrections. It is unclear from her argument what these corrections contain or why Ms. Niles believes they are significant. If she previously submitted any corrections to the district court, they do not appear in the record on appeal. Any concerns Ms. Niles may have concerning the completeness of her deposition for review purposes are best addressed to the district court in the first instance on remand.

### b. Striking of FCE Documents

Ms. Niles also challenges the district court's decision to strike certain documents attached to her motion for summary judgment. The district court struck her exhibit 10, an affidavit of Sharon Gram, the records custodian at Ransom Memorial Hospital (RMH), where Ms. Niles underwent the FCE. The affidavit was offered to authenticate over 300 pages of medical records, including her exhibits 3 through 5. Exhibits 3 through 5 purportedly are early drafts of the FCE report that contain handwritten notations and a fax cover sheet between Isernhagen and Mr. Van Buskirk. Ms. Niles draws the conclusion from these exhibits that Isernhagen and/or MetLife induced Mr. Van Buskirk to modify his conclusions on the final draft of the FCE.

The district court struck exhibit 10 because Ms. Niles failed to disclose it as part of her initial disclosure of documents under Fed. R. Civ. P. 26. It then struck exhibits 3 through 5 for lack of foundation, which was no longer provided by the stricken exhibit 10.

Ms. Niles's initial Rule 26 document disclosures identified only the defendants' claim file, including the final FCE, and did not mention her exhibit 10.[3] In striking the exhibit, the district court cited Fed. R. Civ. P. 26(a)(1)(B),[4] which states that "a party must, without awaiting a discovery request, provide to other parties . . . a copy of, or a description by category and location of, all documents . . . that are in the [party's possession] and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Rule 37(c)(1) further provides that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." We review for an abuse of discretion both the district court's decisions to impose sanctions for discovery abuses under Rule 37, *Woodworker's Supply, Inc. v. Principal Mut. Life*

---

[3] The applicable version of Rule 26 exempts from its disclosure requirements "an action for review on an administrative record." Fed. R. Civ. P. 26(a)(1)(E)(I). Ms. Niles does not argue that this exception applies here.

[4] A revised version of Rule 26 is currently in effect, but did not go into effect until December 1, 2007, and was therefore not applicable to the required disclosures in this case.

-19-

*Ins. Co.*, 170 F.3d 985, 992-93 (10th Cir. 1999), and its application of Rule 26(a), *Davis v. U.S. Bancorp*, 383 F.3d 761, 764 (8th Cir. 2004).

Ms. Niles admits that she failed to disclose exhibit 10 as part of her initial Rule 26 disclosures. She argues that the district court should nevertheless have admitted the exhibit, for two reasons: (1) she had no duty under Rule 26 to disclose it; and (2) any failure to disclose it was harmless.

Ms. Niles argues that she had no duty to disclose the exhibit under Rule 26(a)(1)(A), pertaining to the disclosure of *witnesses*. But the district court did not rely on Rule 26(a)(1)(A); it relied on Rule 26(a)(1)(B), pertaining to the disclosure of *documents*. The distinction is significant because the argument Ms. Niles raises applies only to the disclosure of witnesses under Rule 26(a)(1)(A). She argues that a records custodian like Ms. Gram is not an "individual likely to have discoverable information," Rule 26(a)(1)(A), and therefore need not be disclosed *as a witness*. Ms. Niles fails to show that this argument has any relevance to the requirement of production of *documents*.

Moreover, even if Rule 26(a)(1)(A) were applicable here (perhaps on a theory that an affidavit and the identity of the witness providing it are inseparable), Ms. Niles fails to show that as a records custodian Ms. Gram had no "discoverable information." Ms. Niles cites no authority to support her theory that the identity of records custodians need not be disclosed under Rule 26(a)(1)(A). Given the nature of the documents involved in this case, we

conclude that the district court did not abuse its discretion in determining that the affidavit was subject to disclosure. Ms. Niles sought to use Ms. Gram's declaration to obtain admission of documents suggesting that the defendants exerted undue influence over the preparation of the FCE. Defendants were deprived by the lack of disclosure of an opportunity to depose Ms. Gram concerning any knowledge she might have of the history and provenance of the FCE documents and the handwritten notations on them. *See U.S. ex rel. Fago v. M&T Mortgage Corp.*, 518 F. Supp. 2d 108, 113-14 (D.D.C. 2007) (striking declarations from title company records custodians along with attachments purportedly showing history of challenged documents because party failed to disclose them under Rule 26(a)(1)).

We are concerned, however, by two other arguments that Ms. Niles makes in support of admission of exhibit 10 and, consequently, exhibits 3 through 5. She argues that she intends to use exhibit 10 solely for impeachment purposes, *see* Rule 26(a)(1)(B), and that her failure to disclose exhibit 10 was harmless, *see* Rule 37(c)(1). The district court did not address these considerations in striking the exhibits. Because these exhibits may be crucial to Ms. Niles's case if they invalidate the FCE, we instruct the district court on remand to consider whether the exhibits should be received notwithstanding the lack of timely disclosure of exhibit 10 and the consequent lack of authentication for exhibits 3 through 5, either because they are going to be used solely for impeachment purposes, or

-21-

because the lack of disclosure is harmless.  The defendants may of course renew their other objections to receipt of these exhibits, including their argument that they fall outside the administrative record and do not meet the criteria in *Hall*.

## CONCLUSION

We VACATE the portion of the district court's decision granting summary judgment to the defendants on Ms. Niles's ERISA claim for disability benefits, and denying Ms. Niles's summary judgment motion, and REMAND for reconsideration of both defendants' and Ms. Niles's motions for summary judgment under the appropriate de novo standard.  Should the district court find that it cannot grant summary judgment to either party because genuine issues of material fact exist, it should then conduct a de novo review of the evidence to determine whether Ms. Niles's benefits claim is supported by a preponderance of the evidence.  We AFFIRM the district court's challenged evidentiary rulings, with the exception of its order striking Ms. Niles's exhibits 3 through 5 and 10, which it should reconsider in light of the analysis provided in this order and judgment.

Entered for the Court

Michael R. Murphy
Circuit Judge